UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN O'NEILL,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA PHYSICIANS' SERVICE, et al.,<br><br>    Defendants. | Case No. 25-cv-00876-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |

Kathleen O'Neill sues California Physicians' Services, dba Blue Shield of California, and Blue Shield of California Life and Health Insurance Company (collectively, "Defendants") alleging Defendants operated a "sustained criminal enterprise" from 2015 to the present that deprived her of insurance coverage while extracting premiums and federal subsidies. (Dkt. No. 34 ¶ 1.)[1] Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud and deceit, and breach of fiduciary duty. Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (Dkt. No. 43.) For the reasons explained below, the FAC is DISMISSED with leave to amend.

## BACKGROUND

### A. First Amended Complaint Allegations

Plaintiff enrolled in Blue Shield's "Silver 87 PPO health insurance plan" in 2015. (Dkt. No. 34 ¶ 9.) Over the course of several years, Defendants misappropriated funds and "failed to provide any of the substantive insurance benefits it guaranteed under [Plaintiff's] policy number." (*Id.* ¶ 2.) Defendants' misrepresentations about Plaintiff's coverage include:

---

[1] Record citations are to material in the Electronic Case File ("EFC"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

- In July 2016, Defendants sent Plaintiff a letter stating her coverage had been cancelled effective April 30, 2016. (*Id.* at ¶ 11.)
- In 2016 and 2017, Defendants repeatedly denied coverage for specific visits despite Plaintiff's timely payment of premiums. (*Id.* ¶¶ 15–16, 24 (denying payment for acupuncture and chiropractic treatments)); (*Id.* ¶ 18 (denying payment for treatment at Sutter Health for expenses related to a shattered tibia)); (*Id.* ¶ 58 (denying payment for treatment at Good Samaritan Hospital in Corvallis, Oregon).)
- In October 2023, Defendants asserted Plaintiff remained covered through December 31, 2017, but admitted her policy had been terminated and reinstated four times between 2015 and 2017 before ending on December 31, 2017. (*Id.* ¶¶ 10, 13.)
- From 2015 to 2018, Defendants submitted IRS Form 1095-A filings certifying full-year coverage, despite Plaintiff's gaps in coverage, allegedly allowing Blue Shield to misappropriate premiums and Advance Premium Tax Credits ("APTC") funds. (*Id.* ¶¶ 56, 57, 58, 59.)

Throughout this period, Plaintiff continued paying her premiums because Defendants issued "false certifications of coverage and fabricated records," leading her to believe her policy remained in effect. (*Id.* ¶ 96.) Defendants' repeated denials of medical coverage caused several forms of injury. Plaintiff suffered "loss of earning capacity, reputational damage, harm to credit, and time lost managing a fraudulent insurance relationship." (*Id.* ¶ 107.) She also experienced "severe emotional distress resulting from denied coverage during medical crises . . . delayed medical services, and debt collection resulting from denied claims." (*Id.* ¶ 108.)

**B. Procedural Background**

On December 17, 2024, Plaintiff filed her complaint in the San Francisco County Superior Court. (Dkt. No. 1-2.) Plaintiff brought claims against Defendants for (1) fraud and deceit, (2) tax fraud, (3) wire fraud, (4) phone fraud, (5) mail fraud, (6) embezzlement, (7) conspiracy to defraud, and (8) a Racketeer Influenced and Corrupt Organizations Act (RICO) claim under 18 U.S.C. § 1962. (*Id.*) Defendants removed the action to this federal court based on federal question and diversity jurisdiction. (Dkt. No. 1.) Plaintiff then moved to remand the action to state court for

2

lack of federal question jurisdiction, and to strike affirmative defenses, which the Court denied. (Dkt. Nos. 8, 12, 23.) Defendants thereafter moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 33.) The Court granted the motion after Plaintiff filed a 118-page amended complaint in lieu of an opposition brief and deemed the First Amended Complaint the operative complaint. (Dkt. No. 38.) The now operative First Amended Complaint pleads claims for civil RICO, fraud and deceit, and breach of fiduciary duty. (Dkt. No. 34.) Defendants have again moved to dismiss. (Dkt. No. 43.)

## DISCUSSION

Defendants move to dismiss Plaintiff's claims for failure to state a claim and as barred by the statute of limitations.

## I. FAILURE TO STATE A CLAIM

### A. FRAUD AND DECEIT

Under California law, "[t]he elements of fraud, which give rise to a tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (1996) (internal quotation marks and citation omitted). Additionally, under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Lazar*, 12 Cal. 4th at 638 ("[F]raud must be pled specifically; general and conclusory allegations do not suffice.") (internal citations omitted).

Plaintiff's fraud claim is based on the following allegations: Defendants "systematically and repeatedly misrepresented [Plaintiff's] insurance coverage status" by certifying her coverage as active while terminating her policy, collecting premiums, and issuing false certifications in "official tax forms, provider communications, and internal records." (Dkt. No. 34 ¶ 93.) Defendants "fabricated policy reinstatements," ignored a court order, and "misclassif[ied] withheld funds" to conceal liability, which she describes as "calculated deception." (*Id.* ¶ 95.) Further, Defendants intended to defraud Plaintiff by issuing "false certifications and fabricated records" to induce her "to continue paying premiums, to seek care, and to file claims," while

3

concealing the truth through "mislabeling funds and issuing nominal refunds." (*Id.* ¶ 96.) Plaintiff relied on "official documents filed under penalty of perjury, monthly premium invoices, and direct communications," which no reasonable insured would doubt. (*Id.* ¶ 97.) Finally, Plaintiff paid "over $20,000 in premiums and nearly $19,000 in federal subsidies" without receiving coverage, incurred "thousands of dollars in unpaid medical bills" sent to collections, was denied "treatment for a broken leg," and suffered "profound emotional, physical, and financial harm." (*Id.* ¶ 98.)

While Plaintiff's allegations reference each element of a fraud claim, they are too conclusory to satisfy Rule 9(b)'s strict pleading requirements. Plaintiff must allege the "who, what, when, where, and how of the fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiff's allegations do not include enough information to enable Defendants to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with. *See Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 838–39 (2016) (finding plaintiff sufficiently pled fraud because the complaint identified "the dates, times, and names of the individuals who initiated [the] communications . . . the identities of certain individuals acting as [defendant's] agents . . . [and] the basis for the allegation those individuals had authority to act on [defendant's] behalf"). For example, Plaintiff's allegation Defendants continued collecting premiums after terminating her policy does not identify which Defendant accepted her payments, the specific date, month, or billing cycle when any certification falsely represented coverage, or how Defendants knew the coverage certifications were false when they issued them. *See Fortaleza v. PNC Fin. Serv. Grp., Inc.*, 642 F. Supp, 2d 1012, 1021 (N.D. Cal. 2009) (dismissing plaintiff's fraud claim, in part, because the complaint failed to allege particularized facts describing "the circumstances [of] each misrepresentation, such as the time, place and nature of the allegedly fraudulent representations"). And while she alleges Defendants' conduct "exploited [Plaintiff's] reliance, inducing [Plaintiff] to act to her detriment while [Defendants] conceal[ed] the truth" (Dkt. No. 34 ¶ 96), Plaintiff does not identify what the truth was, what the documentation said, or explain why it was reasonable for her to rely on Defendants' representations. *See Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1066 (2012) ("In addition to

4

pleading actual reliance, the plaintiff must set forth facts to show that his or her actual reliance on the representations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault.") (internal quotation marks and citation omitted).

So, Plaintiff's Complaint fails to meet the requirements of Rule 9(b). Plaintiff has not specifically alleged the circumstances constituting the fraud, such as who made the misrepresentations, as well as when, where, how they were made, and why the representations were false. Accordingly, Plaintiff's fraud claim is DISMISSED.

### B. CIVIL RICO

Defendants move to dismiss Plaintiff's RICO claim on the grounds Plaintiff lacks standing to assert a RICO claim, fails to plead sufficient predicate acts, and fails to satisfy Rule 9(b). (Dkt. No. 43 at 13, 15–16.) Plaintiff's RICO claims fails for essentially the same reasons as her common law fraud claim. Plaintiff does not allege facts sufficient to plausibly allege the predicate acts of mail and wire fraud under Rule 9(b)'s particularity requirement.

#### 1. RICO Standing

To establish standing under Section 1964(c), a civil RICO plaintiff must show an "injury to his business or property." *Shulman v. Kaplan*, 58 F.4th 404, 410 (9th Cir. 2023); *see also Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023) (requiring the plaintiff to demonstrate "harm to a specific property interest cognizable under state law" and the injury produced a "concrete financial loss."). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005); *see also In re Mendenhall's Estate*, 182 Cal. App. 2d 441, 444 (1960) ("An insurance policy is property. It can be sold, assigned or bequeathed by the owner. Its pecuniary value is the same as though the owner held a promissory note of the insurance company payable on condition. Upon payment, the title to the money paid follows the title to the policy.") (internal citation omitted).

Although Plaintiff does not specifically address RICO standing, her allegations support a plausible inference of an injury to her property with respect to Defendants' alleged

5

misappropriation of her premium payments. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008) ("In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money. . . . Money, of course, is a form of property.") (internal citation omitted). The FAC alleges Plaintiff "suffered multiple concrete injuries to her business and property" because "Defendants' fraudulent practice of falsely certifying active insurance coverage while terminating policies without notice, [and] denying valid medical claims . . . caused [Plaintiff] to incur substantial financial loss, credit harm, and lost business opportunities." (Dkt. No. 34 ¶ 86.) Alternatively, Plaintiff claims an injury to property based on Defendants' "secret deposit" with the California State Controller as a "further deprivation of her property rights." (*Id.* ¶ 89.)

By contrast, Plaintiff's alleged damages based on an "intangible property interest," such as "the right to control one's time and the opportunity to engage in gainful employment" (*Id.* ¶ 87), represent "personal injur[ies] . . . excluded from the requirement of injury to 'business or property' under section 1964(c)." *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990). Further, Plaintiff's assertion Defendants "misappropriat[ed] . . . federal subsidy payments" (Dkt. No. 34 ¶ 86) is too remote to confer standing because "there are more direct victims of the alleged wrongful conduct"—in this case, the government. *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 185 F.3d 957, 963 (9th Cir. 1999) ("A direct relationship between the injury and the alleged wrongdoing, although not the sole requirement of RICO . . . has been one of its central elements.") (internal quotation marks and citations omitted).

### 2. RICO Predicate Acts

To maintain a civil RICO claim, Plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. § 1964(c)). Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply to RICO claims. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). "[R]acketeering activity is any act indictable under several provisions of Title 18 of the United States Code, and

6

includes the predicate acts of mail fraud, wire fraud and obstruction of justice." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (cleaned up).

Plaintiff alleges predicate acts of mail and wire fraud. "[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud*.*" *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc*., 806 F.2d 1393, 1399–1400 (9th Cir. 1986) (internal citations omitted).  Any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (internal quotation marks and citations omitted), even if the mailing itself "contain[s] no false information." *Id*. at 715 (internal citation omitted).  Plaintiff alleges Defendants "engaged in a systematic and multi-year scheme involving numerous predicate acts of mail and wire fraud, all committed in furtherance of their racketeering enterprise." (Dkt. No. 34 ¶ 79.)

According to the FAC, "[f]rom 2015 through 2021, the Defendant repeatedly transmitted false and misleading documents and communications to both Ms. O'Neill and federal agencies, including IRS Forms 1095-A, falsely certifying active health insurance coverage throughout the entire year and premium payments that the Defendant was not entitled to retain." (*Id*.)  Plaintiff identifies four exhibits which she alleges were false and "sent via mail and electronic transmissions to Covered California and the IRS, constituting separate predicate acts." (*Id*. (citing Ex. 1 at ECF 57–58; Ex. 3 at ECF 63–66; Ex. 4 at ECF 68; Ex. 6 at ECF 76–81).)  In an October 2023 letter, Defendants confirmed Plaintiff's coverage from February 2015 through December 2017, noting one-day terminations and reinstatements before coverage ended on December 31, 2017. (*Id.* ¶ 79 (citing Ex. 1 at ECF 57–58).)  Defendants later issued refund checks for overpayments following termination. (*Id.* ¶ 83 (citing Ex. 3 at ECF 63–66).)  Plaintiff also received notice from the California State Controller's Office for a refund, which she characterizes as "fraudulent concealment and misappropriation." (*Id.* ¶ 82 (citing Ex. 4 at ECF 68).)  Lastly, Plaintiff references "false IRS filings," presumably referring to Defendants' IRS Form 1095-A submissions. (*Id.* ¶ 83 (*see* Ex. 6 at ECF 63–66).)

These allegations fail to identify with sufficient particularity "the time, place, and specific

7

content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). While the letters Plaintiff identifies describe the termination and reinstatement of her coverage, Plaintiff fails to allege facts that plausibly support an inference of wire or mail fraud beyond the conclusory allegations that they were part of a larger scheme of defrauding Plaintiff. First, Plaintiff does not identify any false statement in Defendants' October 2023 letter or make allegations supporting an inference the letter contained false information when issued. Second, Plaintiff fails to identify a false statement in the refund correspondence or make allegations supporting an inference Defendants acted with fraudulent intent when they issued the refund checks. Third, the letter from the California State Controller's Office is a state-issued notice, not a statement by Defendants, and Plaintiff offers no allegations supporting an inference it satisfies any fraud element. Finally, Plaintiff's reference to Defendants' IRS Form 1095-A submissions does not explain which certification is false or how Defendants knew the information contained inaccuracies at the time of filing. *See, e..g, RJ v. Cigna Health and Life Ins. Co.*, 625 F. Supp. 3d 951, 963 (N.D. Cal. 2022) (finding mail and wire fraud sufficiently pled because plaintiffs identified the individuals who made the alleged representations, described the false statements about coverage and reimbursement rates, and alleged omissions regarding repricing). Conclusory allegations such as those here fall short of the specificity Rule 9(b) requires. *See Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 195–96 (9th Cir. 1987) ("[S]pecific intent under the mail fraud statute is satisfied by the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension and this intention is shown by examining the scheme itself.") (internal citations omitted); *see also Desoto v. Condon*, 371 Fed. App'x. 822, 824 (9th Cir. 2010) (holding allegations of mail and wire fraud failed to satisfy Rule 9(b)'s particularity requirement because of "vague and conclusory" allegations). Even construing Plaintiff's claims liberally because she is an unrepresented litigant, Plaintiff has not alleged facts to plausibly support an inference of fraudulent intent by any agent or representative of Defendants because she does not offer facts identifying the "who, what, when, where, and how of [Defendants'] fraud." *Vess*, 317 F.3d at 1106.

1   Thus, while Plaintiff has adequately alleged injury, she fails to plead particularized facts to
2   meet Rule 9(b)'s heightened standard for the alleged predicate acts of mail and wire fraud.
3   Therefore, Plaintiff's RICO claim is DISMISSED.

### C. BREACH OF FIDUCIARY DUTY

Under California law, "[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820 (2011). "The insurer-insured relationship, however, is not a true 'fiduciary relationship' in the same sense as the relationship between a trustee and beneficiary, or attorney and client." *Vu v. Prudential Property & Casualty Ins. Co.*, 26 Cal. 4th 1142, 1150–51 (2001). "This characteristic has led the courts to impose 'special and heightened' duties but while these special duties are akin to, and often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, not because the insurer is a fiduciary." (*Id.* at 1151) (internal quotation marks and citation omitted); *see also Almon v. State Farm Fire & Cas. Co.*, 724 F. Supp. 765, 766 (S.D. Cal. 1989) ("[A]lthough the duty between the plaintiff and defendants is fiduciary in nature, there is no independent cause of action for breach of fiduciary duty.").

"[A]n insurer's breach of its fiduciary-like duties is adequately redressed by a claim for breach of the covenant of good faith and fair dealing implied in the insurance contract." *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1212 (2002) (internal quotation marks omitted); *see also Butler v. Clarendon America Ins. Co.*, 494 F. Supp. 2d 1112, 1136 (N.D. Cal. 2007) (internal quotation marks omitted) ("[T]he sounder approach is for courts to analyze an insurer's alleged breach of its fiduciary-like duties as a claim for breach of the covenant of good faith and fair dealing."). Here, Plaintiff has not alleged any facts showing a fiduciary relationship beyond Defendants' role as her insurer. (Dkt. No. 34 ¶ 101.)

Accordingly, the Court GRANTS Defendants' Motion to dismiss Plaintiff's breach of fiduciary duty claim.

### II.   STATUTE OF LIMITATIONS

Defendants insist Plaintiff's claims are also all barred by the statute of limitations. (Dkt.

9

No. 43 at 14–16.) Plaintiff's opposition brief contends "each claim is timely" without further discussion and mentions the "discovery rule" in passing. (Dkt. No. 44 at 4.) The statute of limitations defense "may be raised by a motion for dismissal . . . [i]f the running of the statute is apparent on the face of the complaint . . . ." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). And the defendant bears the burden of proving the action is untimely. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon*, 614 F.2d at 682 (internal citation omitted). Here, Defendants have shown all of Plaintiff's claims are time-barred under the applicable statute of limitations.

### A. Plaintiff's Claims are Time-Barred.

The statute of limitations for a civil RICO claim is four years. *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001). Under the "injury discovery rule," the RICO statute of limitations "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (internal quotation marks and citation omitted); *see also State Farm Mut. Auto. Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987) (explaining the rule of "separate accrual" provides a new limitations period for each distinct injury arising from a RICO violation, beginning when the plaintiff knew or should have known of the injury). So, a plaintiff need not discover the injury is part of a "pattern of racketeering" for the statute to begin to run. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997). California fraud claims carry a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d); *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008). A fraud claim accrues when the last essential element of the cause of action occurs. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). "The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (2014).

Here, Plaintiff alleges by 2016 she "chose to forgo additional care" after being told no coverage was available despite paying her premiums, leaving her with unpaid chiropractic bills.

(Dkt. No. 34 ¶¶ 15, 16.) She further alleges she received a questionnaire from "The Rawlings Company LLC" about treatment for her broken leg at "Palo Alto Medical Foundation," which she contends "falsely suggest[ed] there were 'benefits provided,' when in fact none were." (*Id.* ¶ 20.) By 2017, "despite consistently paying her premiums, [Plaintiff] had received no actual coverage for three consecutive years," and her unpaid medical bills had been sent to collections while an urgent appeal for medical care was denied. (*Id.* ¶¶ 22, 25, 26.) In 2018, Plaintiff filed a small claims action, obtained a judgment requiring reinstatement and payment of benefits, and alleges Defendants "defied the court order outright." (*Id.* ¶ 30.) Accordingly, drawing all reasonable inferences in Plaintiff's favor, the basis for her claims accrued no later than 2018. Because she filed her complaint in December 2024 (*Id.* at 1), all claims based on those alleged injuries are barred by the applicable statutes of limitations.

**B. Possible Statute of Limitations Extensions**

There are two extensions to the statute of limitations that could be relevant here: (1) the delayed discovery rule, and (2) equitable tolling. The delayed discovery rule tolls accrual until the plaintiff actually discovers or reasonably should have discovered the claim. *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011). To invoke delayed discovery, a plaintiff must plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). Equitable tolling pauses the limitations period when a litigant diligently pursues his rights, but extraordinary circumstances prevent timely filing. *Lozana v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Plaintiff has not alleged facts plausibly supporting either extension.

"California courts have long applied the delayed discovery rule to claims involving fraud, difficult-to-detect injuries, or the breach of a fiduciary relationship." *Perez-Encinas v. AmerUS Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006). The delayed discovery rule tolls accrual until the plaintiff actually discovers or reasonably should have discovered the claim. *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011). Once aware of an injury, plaintiffs must conduct a reasonable investigation and are charged with knowledge a reasonable inquiry would reveal. *Fox*, 35 Cal. 4th at 808. To invoke delayed discovery, a plaintiff must

11

plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* Conclusory allegations of diligence cannot suffice. *Id.*; *see also E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1324–26 (2007) (holding the plaintiff adequately pled delayed discovery and reversing the trial court's order sustaining the defendant's demurrer).

Equitable tolling pauses the limitations period when a litigant diligently pursues his rights, but extraordinary circumstances prevent timely filing. *Lozana v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Courts have long recognized "the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for the period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 99 (1976). A plaintiff must plead with particularity facts showing "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (citing *Hexcel Corp v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)).

But as Plaintiff does not allege facts plausibly supporting either statute of limitations extension, Defendants have shown the applicable statute of limitations bars all of Plaintiff's claims. This is an additional reason the Court GRANTS Defendants' Motion to dismiss Plaintiff's claims.

### III. LEAVE TO AMEND

Defendants seek dismissal with prejudice, arguing amendment would be futile. (Dkt. No. 43 at 24.) "Absent prejudice [to the opposing party], or a strong showing [by the party opposing amendment] of any of the [discretionary] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Given Plaintiff's unrepresented status, the Court GRANTS her leave to amend, except as to the breach of fiduciary duty claim.

//

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. Plaintiff does not allege facts sufficient to satisfy Rule 9(b)'s pleading requirements for her RICO and common-law fraud claims. Additionally, her claims are time-barred by the applicable statutes of limitations. The breach of fiduciary duty claim is dismissed without leave to amend, but she may attempt to allege a claim for breach of the duty of good faith and fair dealing. Plaintiff may not add any new defendants without further leave of court.

Plaintiff's amended complaint must be filed by December 18, 2025. In light of the holidays, Defendants' response is due January 15, 2026. If Plaintiff does not file an amended complaint, by that date, judgment will be entered in Defendants' favor.

This Order disposes of Docket No. 43.

**IT IS SO ORDERED.**

Dated: November 17, 2025

JACQUELINE SCOTT CORLEY
United States District Judge