UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE,<br>et al.,<br><br>Defendants. | Case No.  25-cv-00876-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 50, 53 |

Plaintiff Kathleen O'Neill, proceeding without attorney representation, sues California Physicians' Services, dba Blue Shield of California, and Blue Shield of California Life and Health Insurance Company (collectively, "Defendants") alleging Defendants deprived her of insurance coverage while extracting premiums and federal subsidies.  (Dkt. No. 49.)[1]  Plaintiff asserts claims for fraud and deceit, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC").  (Dkt. No. 50.)  For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss and DISMISSES Plaintiffs' claims as barred by statutes of limitations and for failure to state a claim.  Dismissal is without leave to amend, except for the claim for breach of the implied covenant of good faith and fair dealing.

**BACKGROUND**

The Court reiterates its discussion of Plaintiff's allegations and the case's procedural history from its prior order on Defendants' motion to dismiss the First Amended Complaint

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court<br>Northern District of California

("FAC"). (Dkt. No. 43.) The Court dismissed Plaintiff's RICO and fraud claims because Plaintiff did not identify with sufficient particularity "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." (*Id.* at 7-8 (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In sum, Plaintiff did not identify what information was false in her attached exhibits, which consisted of letters, refund checks, and tax statements from Defendants and a state-issued notice from the California State Controller's Office. (Dkt. No. 43 at 7-8.) Nor did Plaintiff plausibly allege scienter or fraudulent intent with respect to those statements. (*Id.*) Additionally, the Court dismissed Plaintiff's breach-of-fiduciary-duty claim, noting it is better styled as a claim for breach of the implied covenant of good faith and fair dealing. (*Id.* at 9.) Next, the Court noted the applicable statutes of limitations form another basis for dismissing all of Plaintiffs' claims. (*Id.* at 9-12.) Dismissal was with leave to amend, except for the fiduciary duty claim.

The SAC largely re-alleges the same facts from the FAC, with some stylistic and organizational differences. First, for the fraud and RICO claims, Plaintiff reorganizes her allegations under "who, what, where, when, and why" sub-headings to clarify the particulars of Defendants' fraudulent scheme. Second, Plaintiff brings new claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment under the facts previously alleged under a claim for breach of fiduciary duty; namely, Defendants retained insurance premium payments and did not provide insurance coverage. Third, Plaintiff's SAC has sections devoted to the statute of limitations, the discovery rule, and equitable tolling, which repeat allegations from the preceding sections. For brevity's sake, the Court will discuss the relevant tolling allegations below. Finally, the SAC cites exhibits from the FAC but does not re-attach the exhibits, so the Court will treat those exhibits as if they were re-alleged in the SAC.

## DISCUSSION

As a preliminary matter, the Court GRANTS, in part, and DENIES, in part, Defendants' administrative motion to strike Plaintiff's opposition. (Dkt. No. 53.) The Court will not strike Plaintiff's opposition, although it was untimely filed. The Court will, however, consider Defendants' reply attached to the administrative motion.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

## I.    Statute of Limitations

### A.  Legal Standard

When reviewing a motion to dismiss, courts accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The statute of limitations is an affirmative defense a defendant may raise in a motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id*. So, Defendants' motion must be granted due to the statute of limitations if, drawing all reasonable inferences in Plaintiff's favor, Plaintiff's allegations "would not permit the plaintiff to prove the statute was tolled." *Id.*

As noted in the Court's prior order, a RICO claim has a four-year statute of limitations. *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001). Plaintiff's RICO claim accrues "when a plaintiff knows or should know of the injury that underlies his cause of action," *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996), and Plaintiff need not discover the injury as part of a "pattern of racketeering" for the statute to begin to run. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997). Plaintiff's fraud claim has a three-year statute of limitations, Cal. Code Civ. Pro. § 338(d); *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008), and accrues when "when the cause of action is complete with all of its elements," that is, "when the wrongful act is done or the wrongful result occurs, and the consequent liability arises." *Norgart v. The Upjohn Co.*, 21 Cal.4th 383, 397 (1999) (cleaned up). Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on a contract theory, not a tort theory, and therefore has a four-year statute of limitations. Cal. Code Civ. Pro. § 337(1); *Frazier v. Metropolitan Life Ins. Co.*, 169 Cal. App. 3d 90, 102 (1985). The statute of limitations for Plaintiff's unjust enrichment claim is two years to the extent it is based on a contract and three years to the extent it is based on fraud. Cal. Code Civ. Pro. §§ 338(d), 339; *Wu v. Sunrider Corp.*, 2018 WL 6266577 at *5 (C.D. Cal. May 22, 2018), *aff'd*, 793 F. App'x 507 (9th Cir. 2019).

Drawing all inferences in Plaintiff's favor, and reading the complaint with the required liberality, Plaintiff's allegations compel the inference her claims accrued outside the applicable statutes of limitations, with two exceptions explained below, and the allegations that occurred within the applicable statutes of limitations do not plausibly state a claim. For almost all of her claims, Plaintiff's allegations compel the inference she was injured and learned or should have learned the basis of her claims more than four years before she filed her complaint, so the claims are time-barred. Plaintiff also has not sufficiently alleged an application of the discovery rule or equitable tolling. Dismissal is without leave to amend, with the exception of her implied covenant claim, as Plaintiff has already had an opportunity to amend her claims to cure these defects and further amendment would be futile.

### B. Fraud Claims

#### 1. The Basis of Plaintiff's Fraud Claims

In support of her fraud claims, Plaintiff identifies many statements that Defendants made between 2015 and 2024. Plaintiff maintains these statements falsely represented details about Plaintiff's health insurance coverage. The Court summarizes these statements below.

The earliest alleged statements are Defendants' 1095-A marketplace statements and IRS 1095 Forms for the years 2015-2018. Plaintiff claims the "who, what, when, where, and how of the fraud" is "[f]rom 2015 to 2018, Defendants submitted IRS Form 1095-A filings certifying full-year coverage, despite Plaintiff's gaps in coverage, allegedly allowing Blue Shield to misappropriate premiums and Advance Premium Tax Credits ('APTC') funds." (*Id.* ¶ 11 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1091, 1106 (9th Cir. 2003)).) In these tax filings, "Defendants reported to government authorities that, from February 1, 2015, through December 31, 2018, Plaintiff was fully enrolled and receiving full health insurance coverage. That representation was false. During this period, Plaintiff did not have access to covered benefits." (Dkt. No. 49 ¶ 13.) The fraudulent scheme embodied in these tax forms, in Plaintiff's words, is a "misappropriation of funds" which she "was entirely prevented from discovering." (*Id.* ¶¶ 17(3)-17(4).)

Next, in 2016 and 2017, Defendants sent Plaintiff various letters, which had "conflicting

representations on coverage and premium payments." (*Id.* ¶¶ 19-36.)  For example, "[o]n September 19, 2016, Defendants[…] sent Plaintiff a letter instructing that she pay her policy to bring it current, implying that premiums were unpaid, and stating that the Defendants were pleased to confirm reinstatement of Plaintiff's health plan coverage." (*Id.* ¶ 19.)  The next day, "Defendants[ …] sent Plaintiff a letter stating her coverage had been cancelled, and she had no right to receive benefits effective April 30, 2016." (*Id.*)  The latter representation was "false because Plaintiff had fully complied with all plan requirements and made nine premium payments between January 13, 2016, and March 29, 2016, yet the Defendants had covertly determined to terminate coverage without lawful basis." (*Id.* ¶ 21.)  Both letters also "conflict with" the 1095-A statements from 2016 "which show uninterrupted coverage each month[.]" (*Id.* ¶ 24.)

Additionally, throughout "2016 and 2017, Defendants repeatedly denied coverage for specific visits despite Plaintiff's timely payment of premiums." (*Id.* ¶ 37.)  Plaintiff alleges she received treatment for acupuncture, a shattered tibia, and surgery, but "Defendants denied all benefits submitted on Plaintiff's behalf by asserting that Plaintiff's coverage was not in effect." (*Id.*)  Then, Defendants "communicated such denials," after which "debt collectors … acted on Defendants' behalf to attempt to collect the amounts improperly denied." (*Id.* ¶ 56.)  Between 2017 and 2018, three debt collectors each "sent Plaintiff a letter attempting to collect a debt for the Defendants' unpaid medical bills" for these treatments.  (*Id.* ¶ 55.)

Defendants sent Plaintiff another letter on December 18, 2017, this time "in response to a grievance requesting reinstatement for her health insurance coverage. The letter stated Plaintiff was approved for a 'one-time exception' reinstatement, and further represented that, despite Plaintiff having submitted $741 in payments, her 'payments were not posted.'" (*Id.* ¶ 74.)

In 2018, Plaintiff obtained a small claims judgment against Defendant Blue Shield.  As Plaintiff describes, the judgment "ordered [Defendant] to reopen her online account, reinstate her health insurance coverage, coordinate payments of medical bills [, …] and pay $5,700.00" in damages.  (*Id.* ¶ 63; *see* Dkt. No. 34, Ex. 7.)  The minute order, attached as an exhibit, did not specify whether insurance should be reinstated retroactively to cover past medical bills, or whether Blue Shield must reinstate Plaintiff's insurance moving forward (and if so, under what terms).

(*See id.*)

After the small claims judgment, Plaintiff continued to make premium payments, while Defendants made additional representations that attempted to "pay Plaintiff off" in various ways. (Dkt. No. 49 ¶¶ 74-91) (cleaned up).  Blue Shield sent a letter, dated June 11, 2020, in response to Plaintiff's "request for a refund of payments made by your account after your health plan was terminated" which states "a credit of $8,084.98" for those payments "will be sent to you." (Dkt No. 34, Ex. 8.)  Plaintiff alleges this letter

> acknowledged a credit of $8,084.98 but disavowed responsibility for Plaintiff's ongoing eligibility or disputes over premiums. This misrepresented Defendants' obligations and falsely suggested that Plaintiff's rights and accounts had been fully reconciled. Defendants concealed that they had continuing obligations to apply premiums correctly and maintain active coverage.

(Dkt. No. 49 ¶ 77.)  Six days later, on June 17, 2020, Defendants sent a check to Plaintiff for that exact amount–$8,084.98–with the statements "refund issued via check" and "this account is overpaid. Your coverage ended, resulting in an overpayment." (*Id.*, Ex. 3.)  Over the next year and a half, Defendants sent three more checks, the last of which is dated December 2, 2021, and all of which said "premium refund" or "coverage ended," and the amount of money in the checks corresponds to payments Plaintiff made to Defendants after 2018. (*Compare id.*, Ex. 3 (four checks), *with* Ex. 5 (itemized table with dates of Plaintiff's payments and Defendants' subsequent refunds).)  Plaintiff alleges all four checks "characterized these payments as overpayments or refunds" and "obscured the true status of her premiums and coverage, inducing Plaintiff to continue acting as if all coverage issues were resolved, including maintaining premium payments and refraining from alternative insurance actions." (Dkt. No. 49 ¶ 78.)  Plaintiff does not specify what the "true status of her premiums and coverage" was during this time, except that "coverage issues were resolved." (*Id.*)

Finally, "[a]round September 19, 2024, Defendants covertly placed $8,082.98 with the California State Controller's Unclaimed Property Division. The funds were deliberately labeled by Defendants as 'Invid Policy Benefits or Claim Paym,' rather than as reimbursement of premiums or overpayments." (Dkt. No. 49 ¶ 74.)  Plaintiff's SAC cites a letter from the California State

6

Controller explaining the deposit.  (*Id.* (citing Dkt. No. 34, Ex. 4).)  The letter, addressed to Plaintiff, explains:

> This is to inform you that the property listed below may belong to you.
>
> This property was turned over to the State Controller's Unclaimed Property Division, as required by law, for safekeeping until it can be claimed by the rightful owner or their heirs. California's unclaimed property law requires businesses to submit property, […] to the state if there has been no activity on the account, or the business has had no contact with the owner, generally for three years.

(Dkt. No. 34, Ex. 4.)  The letter is dated August 19, 2024, more than four years after the date in Defendants' refund check for a nearly identical amount of $8,084.98; lists Plaintiff's correct name and address; and identifies the "type of property" as "Indiv Policy Ben or Claim Paym."  (*See id.* Exs. 3, 4.)

### 2.  Plaintiff's Fraud Claims Are Time Barred as a Matter of Law, Except for the Claim Regarding Defendants' Deposit

Drawing all inferences in Plaintiff's favor, the statute of limitations bars Plaintiff's fraud claims as a matter of law, with the exception of the allegations pertaining to Defendants' deposit with the California state government.  Fraud claims have a three-year statute of limitations, Cal. Civ. Proc. Code § 338(d); *Platt*, 522 F.3d at 1054, and accrue when the plaintiff has "actual knowledge" of the fraud or when the last essential element of the cause of action occurs.  *Gypsum*, 55 F.3d at 1406.  Here, Plaintiff expressly alleges the dates on which Defendants made statements: 2015-2018 (tax filings); 2016-17 (coverage denials), 2016, 2017, and 2020 (letters); and between June 11, 2020 to December 2, 2021 (letters and checks saying "refund" and "coverage ended"). (*See generally* Dkt. No. 34, Exs. 3, 8; Dkt. No. 49.)  So, drawing all inferences in Plaintiff's favor, her fraud claim accrued no later than June 2020, when Defendants sent the first letter and check containing misrepresentations such as "refund" and "coverage ended."  (Dkt. No. 31, Exs. 3, 8.) At that point, the "wrongful act [was] done" and "the consequent liability ar[ose]."  *Norgart*, 21 Cal. 4th at 397 (cleaned up).  Yet Plaintiff filed the complaint on December 17, 2024, more than three years after her claim accrued.  (Dkt. No. 1 ¶ 1.)  Therefore, as a matter of law, Plaintiff's fraud claims are time barred, with the exception of a potential claim arising from allegations

regarding Defendants' deposit with the California state government, which occurred in 2024.

### 3. Discovery Rule

Plaintiff insists that even if her claims accrued in June 2020, they are nonetheless timely under the discovery rule. Plaintiff alleges:

> Plaintiff did not discover, and could not reasonably have discovered, the operative fraud until September 2024, when she learned that Defendants had covertly transferred $8,082.98 of her funds to the California State Controller's Unclaimed Property Division— mischaracterized as "Indiv Policy Benefits or Claim Paym" rather than premium reimbursements. This discovery was not the mere realization of injury, but the first time Plaintiff could identify the mechanism, intent, and scope of Defendants' conduct: namely, that Defendants had (1) retained premium payments for years, (2) misrepresented those funds as refunds and overpayments, and (3) ultimately concealed the remaining balance by escheating it to the State under a false designation. Until that point, Defendants' conduct appeared fragmented and administrative—letters asserting "posting errors," checks labeled "overpayment," regulatory responses disclaiming responsibility—each suggesting error or remediation rather than a coordinated scheme. Only when Plaintiff discovered the escheatment and its deliberate mislabeling did the fraud become reasonably apparent.

(Dkt. No. 49 ¶ 160.)

Plaintiff alleges she was unable to discover Defendants' conduct prior to September 2024 for two reasons. First, Defendants did not "disclose that they had internally classified Plaintiff's funds as 'policy benefits' rather than premium reimbursements" when Plaintiff filed grievances and regulatory complaints, communicated with Defendants, received checks from Defendants, and obtained a judgment in small claims court. (*Id.* ¶ 161.) Second, "no reasonable investigation could have uncovered Defendants' internal accounting classifications, the Form 1095-A tax documents handled by Plaintiff's accountant, decisions regarding escheatment, or the mischaracterization and mislabeling of funds." (*Id.* ¶ 162.) As a result, Plaintiff asserts it was not until September 2024 "did the full scope and nature of Defendants' fraudulent scheme become manifest." (*Id.*)

Plaintiff has not alleged facts that plausibly support an application of the discovery rule because, drawing inferences in her favor, her allegations and exhibits compel the inference a reasonable investigation could identify Defendants' alleged scheme before September 2024. As

explained above, Plaintiff learned of Defendants' mischaracterizations no later than June 2020. Additionally, Plaintiff learned of the alleged misappropriations in 2018 at the latest because they were documented in Form 1095-A tax filings.  Plaintiff claims "no reasonable investigation could have uncovered … the Form 1095-A tax documents" and these documents "were entirely within Defendants' exclusive possession," yet in the same sentence says "the Form 1095-A tax documents [were] handled by Plaintiff's accountant."  (*Id.* ¶ 162.)  Plaintiff even expressly alleges she "relied on the form 1095-A" statements from 2015-2018 by "continu[ing] to pay for her insurance" during that time.  (*Id.* ¶ 17(3).)  So, the discovery rule does not apply because, based upon inferences required by Plaintiff's own allegations and attached exhibits, a reasonable investigation of Plaintiff's tax documents and extensive communications with Blue Shield would have revealed the basis of Plaintiff's claims in June 2020 at the latest, if not years before then.

Plaintiff's arguments to the contrary are unavailing.  In her opposition, Plaintiff insists dismissal is "improper where timeliness turns on contested facts" and "the amount of the purported 'refund' checks–refused by Plaintiff–differs from both the premiums she paid, and the amount later deposited with the California State Controller's Office."  (Dkt. No. 52 at 4.)  While Defendants' motion raises a dispute, the Court need not resolve that dispute to find the statutes of limitations bar Plaintiff's claims.  The statements in those checks could not prevent Plaintiff from discovering her claims because, as she acknowledges, "the alleged misrepresentations, omissions, and concealment are themselves the affirmative acts of deception."  (*Id.* at 5.)  In other words, when Plaintiff received the initial check in or around June 2020, she could have investigated the amount of money she paid, concluded a claim arose from the check, and filed suit.  She did not timely do so.  Therefore, she cannot plausibly invoke the discovery rule.

### 4.  Equitable Tolling

As the Court's prior order noted, Plaintiff must plead with particularity facts showing "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (citing *Hexcel Corp v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir.

United States District Court
Northern District of California

2012)).

Under equitable tolling, Plaintiff alleges "Defendants took affirmative acts to mislead Plaintiff" which prevented Plaintiff from learning the "fraudulent character of Defendants' actions" and Plaintiff "acted diligently under the circumstances through internal appeals, regulatory channels, litigation, and ongoing communication." (*Id.* ¶¶ 163-167) (cleaned up). The "affirmative acts to mislead Plaintiff" are in Defendants' letters and checks, where Blue Shield: (1) "[r]epresented that premium payments were 'not posted' despite receipt;" (2) "[r]epresented her insurance was reinstated, when it was not;" (3) "[i]ssued checks labeled as 'overpayments' or 'premium refunds,' obscuring their true nature;" (4) "[d]isclaimed responsibility for eligibility disputes while retaining and allocating funds;" and (5) "[t]ransferr[ing] Plaintiff's funds to the State while mislabeling them as 'policy benefits or claim payments.'" (*Id.* ¶ 164.)

Drawing inferences in Plaintiff's favor, she has not plausibly alleged equitable tolling because her allegations compel the inference she had actual or constructive knowledge of the basis of her claims no later than June 2020. As noted above and in the Court's prior order, Plaintiff knew of, expressly relied on, and filed a small claims suit on the basis for her fraud claims no later than 2018, so Defendants' subsequent conduct cannot toll those claims. Plaintiff then filed complaints with Blue Shield about Defendants' retained payments and received checks and letters in response. Those complaints, checks, and letters put Plaintiff on notice of the facts underlying her claims no later than June 2020. So, Plaintiff's fraud claims are time barred and not tolled.

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's fraud cause of action as time barred, with the exception of a potential fraud claim arising from Defendants' deposit of unclaimed funds in 2024.

**C. RICO Claim**

The elements of a civil RICO claim are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property. *Ove v. Gwinn*, 263 F.3d 817, 825 (9th Cir. 2001). Plaintiff's RICO claim relies on the same allegations as her fraud claims; she alleges Defendants' tax filings, letters, coverage denials, checks with "refunds", debt collection, and placement of funds with the California state government are a

10

"pattern of racketing activity" and a "scheme to defraud" her.  (Dkt. No. 49 ¶¶ 111-133.)  In addition, Plaintiff attaches a letter from Blue Shield showing "a summary of dues/premium payments that have been applied to [her] account," and the letter shows Plaintiff made monthly premium payments of either $282 or $300 between March 1, 2018 to April 1, 2021. (Dkt. No. 34, Ex. 5.)  Those are the payments Defendants retained and mischaracterized in letters and checks, *i.e.*, the alleged racketeering scheme before and after the judgment was entered in May 2018.

As noted above, RICO claims have a four-year statute of limitations.  *Pincay*, 238 F.3d at 1108.  The "injury discovery" rule governs the accrual of civil RICO claims, and this rule has two components.  *Grimmett*, 75 F.3d at 510-11.  "First, the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action."  *Id.* at 510 (cleaned up).  The second component is the "separate accrual rule" where "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before."  *Id.*

Under the second component, "a cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other acts were committed outside the limitations period."  *Id.* at 512 (cleaned up).  An "overt act which will restart the statute of limitations" under the rule has "two elements": "1) It must be a *new and independent act* that is not merely a reaffirmation of a previous act; and 2) It must *inflict new and accumulating injury* on the plaintiff."  *Id.* at 513 (cleaned up) (emphasis in original).  An act is "new and independent" from a previous act if it is "not included among the injuries that naturally flow from" the earlier act.  *Id.* at 513.  And an injury is "new" if it is independent from the prior injury.  To illustrate the separate accrual rule, *Grimmett* held a plaintiff's injury was not "new" because it was "identical to those alleged prior to that time."  *See id.* at 514.  *Grimmett* then contrasted the "identical" injuries with pairs of injuries in other cases that were "independent of one another"; for example, a "wrongful takeover" injury is independent from one about "mismanagement of assets," and an injury from a "false bankruptcy claim" is independent from "harassing litigation."  *See id.* (citing *Bivens Gardens Off. Bldg., Inc. v. Barnett Bank of Fla., Inc.*, 906 F.2d 1546, 1551 (11th Cir. 1990) and *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102-05 (2nd Cir. 1988)).

United States District Court
Northern District of California

Here, drawing all inferences in Plaintiff's favor, Plaintiff's RICO claim accrued no later than June 2020, more than four years before she filed the complaint, and are therefore time barred as a matter of law.  As explained above, Plaintiff expressly alleges she relied on tax filings showing, and obtained a small claims judgment in 2018 regarding, Defendants' retention of premium payments and denial of coverage which occurred between 2015-2018.  Additionally, by the time she obtained the judgment in May 2018, Defendants had already begun retaining premium payments, which Defendants later mischaracterized as "overpayments" and attempted to "refund" in June 2020.  (Dkt. No. 34, Ex. 3 (four checks), Ex. 5 (monthly payments beginning March 2018), Ex. 7 (judgment entered May 2018).)  Therefore, drawing inferences in Plaintiff's favor, her allegations compel the inference the latest she learned or should have learned of her RICO claim was in June 2020.  That month, Defendants sent two communications, a letter and a check.  The letter and check compel the inference a reasonable investigation would have put Plaintiff on notice of the basis for her RICO claims when she received those documents: the letter states it was sent in response to Plaintiff's "request for a refund" for "payments made by your account after your health plan was terminated" and stated $8,084.98 "will be sent to you."  (*Id.*, Ex. 8.)  The check was dated six days after the letter, contained the exact amount of money referenced in the letter, said "refund issued via check," and represented "this account is overpaid. Your coverage ended, resulting in an overpayment."  (*Id.*, Ex. 3.)  So, under the "injury discovery" rule and drawing inferences in Plaintiff's favor, Plaintiff knew or should have known the facts underlying her RICO claim no later than June 2020.  That is more than four years before Plaintiff filed the complaint in this case, so Plaintiff's RICO claims are time barred.

Plaintiff, however, also alleges conduct that occurred after June 2020.  In 2021, Defendants sent three other checks that say "refund" and "coverage ended," and in 2024, Defendants deposited the retained premium payments with the California state government.  So, the question is whether these are "overt act[s] which will restart the statute of limitations."  *Grimmett*, 75 F.3d at 512-13.

The answer is "no"; drawing inferences in Plaintiff's favor, her allegations do not plausibly support the inference Defendants' conduct after June 2020 "inflict[ed] new and accumulating

12

injury on the plaintiff." *Id.* at 513 (cleaned up).  All four checks caused the same alleged injury: they contain the same representations of "refund" and "coverage ended," and purport to "refund" the same string of retained monthly premium payments.  (Dkt. No. 34, Exs. 3, 5, 8.)  And Plaintiff expressly alleges Defendants deposited those "exact funds" with the California state government. (Dkt. No. 49 ¶ 158.)  Because this conduct surrounds the exact same funds (retained premiums) and Plaintiff was on notice of her injury regarding these funds in June 2020, "the injuries [Plaintiff] claims are identical to those alleged prior to that time," meaning the post-2020 conduct does not constitute "overt act[s] which will restart the statute of limitations."  *Grimmett*, 75 F.3d at 512-14.  So, Plaintiff's RICO cause of action is time barred, and the Court dismisses Plaintiff's RICO claim.

### D. Implied Covenant of Good Faith Claim

As noted above, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing has a four-year statute of limitations.  Cal. Code Civ. Pro. § 337(1); *Frazier*, 169 Cal. App. 3d at 102.  The statute of limitations "do[es] not begin to run until a cause of action accrues," which occurs when a cause of action is "complete with all of its elements."  *Fox. v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005).  "Where damages are an element of a cause of action," which is the case for a good-faith-and-fair-dealing claim, "the claim does not accrue until the damages have been sustained."  *Bennett v. Ohio Nat'l Life Assurance Corp.*, 92 Cal. App. 5th 723, 729 (2023).  And under California law, it is a "fundamental rule that the statute begins to run from the time the conduct becomes actionable":

> [W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations **attaches at once.** It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date[.]

*Spellis v. Lawn,* 200 Cal. App. 3d 1075, 1080–81 (1988), *reh'g denied and opinion modified* (May 23, 1988) (cleaned up) (emphasis added).  In *Spellis*, for example, the court held a cause of action for missed child support payments accrued when the defendant "failed to make the first support payment due" because "[a]t that early date plaintiff knew the facts which later formed the essence

of each asserted cause of action." *Id.* at 1079; *see also Bennett*, 92 Cal. App. 5th at 788 (holding a claim for withholding disability insurance payments accrued "when [Defendant] ceased making its monthly … payments" and interpreting *Spellis* as a situation where someone "with[eld] a benefit, thus causing some damage").

Plaintiff's claim alleges five theories: Defendants (1) "[d]en[ied] covered medical claims despite full premium payment and federal certification of continuous coverage;" (2) "[r]epresent[ed] that coverage was 'not in effect' while simultaneously reporting active coverage to federal agencies;" (3) [r]efus[ed] to pay medical claims that Defendants knew or should have known were covered;" (4) [s]hift[ed] unpaid claims into collections rather than correcting coverage errors[;]" and (5) "fail[ed] to reasonably inform Plaintiff of her rights and obligations under the policy." (Dkt. No. 49 ¶¶ 143-149.)

To the extent those first four theories can sustain a good-faith-and-fair-dealing claim, drawing inferences in Plaintiff's favor, that claim is time barred as a matter of law because her allegations compel the inference she sustained damages from those allegations no later than 2018. Plaintiff repeatedly states this conduct continued "through 2021" (*id.* ¶¶ 52, 120), but her allegations do not support an inference she first sustained damages later than 2018. First, Plaintiff states Defendants continued to deny "medical claims" and benefits "through 2021." (*Id.* (citing "Dkt. No. 34, Exs. 14, 15, 18, 20").) But the only medical treatment Plaintiff received, and the correspondence about that treatment, occurred "[i]n 2016 and 2017." (Dkt. No. 49 ¶ 37; *see id.* ¶¶ 37-54; Dkt. No. 34, Ex. 14 (showing "Surgical Services" on "9/15/17"), Ex. 15 (showing "Date of Service" on "12/19/16"), Ex. 20 (letter dated December 1, 2017 noting Defendants "received your request for expedited appeal"), Ex. 18 (response to Plaintiff's grievance dated December 18, 2017).) Relatedly, Defendants' representation "coverage was 'not in effect'" occurred "[o]n October 25, 2017." (Dkt. No. 49 ¶ 42.) Plaintiff then sued and obtained a judgment ordering Defendants to pay for acupuncture treatments in May 2018. (Dkt. No. 34, Ex. 7.) Finally, Plaintiff alleges three instances where "a debt collector sent Plaintiff a letter," all of which occurred in 2017 and 2018. (Dkt. No. 49 ¶ 55.) As soon as Plaintiff sustained damages from this conduct, which would be no later than 2018, her claim accrued and the statute of limitations

14

"attache[d] at once." *See Spellis*, 200 Cal. App. 3d at 1080–81 (cleaned up). So, drawing inferences in Plaintiff's favor, her good-faith-and-fair-dealing claim is time barred as a matter of law, to the extent it relies on denial of claims, representations about coverage that were simultaneous with tax filings, and debt collection.

However, Defendants have not met its burden to show the fifth theory in Plaintiff's claim– Defendants "fail[ed] to reasonably inform Plaintiff of her rights and obligations under the policy" (Dkt. No. 49 ¶ 143)–is time barred as a matter of law. Plaintiff asserts Defendants had an "affirmative duty to reasonably inform [her] of her rights and obligations under the policy" (*id.*), citing *Davis v. Blue Cross of N. Cal.*, 25 Cal. 3d 418 (1979) and *Sarchett v. Blue Shield of Cal.*, 43 Cal. 3d 1 (1987). There, the California Supreme Court held the implied covenant of good faith and fair dealing imposes on an insurer

> the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy. In particular, in situations in which an insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's attention relevant information so as to enable the insured to take action to secure rights afforded by the policy.

*Id.* at 14 (quoting *Davis*, 25 Cal. 3d at 427-28.) In *Davis*, the insurer breached that duty by requiring arbitration where "the average insured is not likely to be aware of a potential arbitration remedy or of the means of initiating such a procedure." 25 Cal. 3d at 428-30. In *Sarchett*, the insurer breached that duty by "fail[ing] to bring relevant information about the right to impartial review and arbitration to its insured's attention" where the insurer "had reason to know that [the plaintiff] was uninformed" of that right because the plaintiff "repeatedly protested" without invoking the right. 43 Cal. 3d at 14-15.

Plaintiff alleges several instances of Defendants failing to inform her of her rights and obligations and, drawing inferences in Plaintiff's favor, claims arising from all but one of those instances are time barred as a matter of law. Plaintiff alleges Defendants should have alerted her to "available remedies, procedures, and options necessary to secure coverage and benefits." (*Id.* ¶ 143.) To the extent she has a claim under *Davis* and *Sarchett* pertaining to "coverage and benefits," that claim would be time barred because, as explained above, drawing inferences in

15

Plaintiff's favor, the only treatments for which Plaintiff was denied coverage occurred in 2016 and 2017, and the last debt collection attempt occurred in 2018. Plaintiff then alleges Defendants "[f]ailed to clearly and accurately explain coverage status, reinstatement rights, or the consequences of alleged premium posting issues; [i]ssued contradictory and misleading termination and reinstatement notices[; and f]ailed to inform Plaintiff of … procedures necessary to preserve benefits;" and "[p]rovided partial, misleading, or inconsistent explanations designed to discourage Plaintiff from effectively pursuing her rights." (*Id.* ¶ 146.) Again, Plaintiff's allegations compel the inference any claims about "benefits," "coverage," "inconsistent explanations," and "premium posting" arose no later than 2017, when Defendants made the alleged communications about these subjects and, in doing so, allegedly failed to bring the relevant information to Plaintiff's attention.

The one good-faith-and-fair-dealing claim that is not time barred arises from the allegation Defendants "[c]oncealed material information regarding account credits, overpayments, and funds owed to Plaintiff." (*Id.*) Presumably, this allegation refers to the letter and checks Defendants sent between June 2020 and December 2021, and the October 2023 letter showing Plaintiff's monthly payments the checks purported to refund. Defendants' motion does not explain why a claim arising from these allegations are time-barred, except to say "any alleged breaches necessarily occurred before December 31, 2017" because "Plaintiff does not dispute that her contractual relationship with Blue Shield ended on December 31, 2017 when the policy was last terminated." (Dkt. No. 50 at 29-30.) Not so. Plaintiff's allegations support an inference there was a breach of a contractual (or at least a quasi-contractual) relationship within the four-year statute of limitations period: she alleges a judgment ordering Blue Shield to reinstate her insurance, she continued to pay premiums "through April 30, 2021," documentation of those payments through April 2021, and Defendants' letter and checks "concealed that they had continuing obligations to apply premiums correctly and maintain active coverage" rather than "properly accounting for Plaintiff's entitlements under the health plan." (*See, e.g.*, Dkt. No. 34, Exs. 3, 5, 8; Dkt. No. 49 ¶¶ 15, 77, 78.) Defendants do not explain why, drawing inferences in Plaintiff's favor, these do not constitute a breach within the statute of limitations period. So,

16

Defendants have not met their burden to show why a good-faith-and-fair-dealing claim arising from this conduct would be time barred.

Accordingly, the Court dismisses Plaintiff's claim for a breach of the implied covenant of good faith and fair dealing as barred by the statute of limitations, with the exception of claims which arise from a failure to inform Plaintiff of her rights and which occurred within the four years Plaintiff filed the complaint (*i.e.*, communications that concealed information about account credits, overpayments, and funds).

### E.  Unjust Enrichment

As noted above, the statute of limitations for Plaintiff's unjust enrichment claim is two years to the extent it is based on a contract and three years to the extent it is based on fraud.  Cal. Code Civ. Pro. §§ 338(d), 339; *Wu*, 2018 WL 6266577 at *5.  Given Plaintiff's claim appears to assert both contract and fraud theories, a three-year statute of limitations applies.  (*See* Dkt. No. 49 ¶¶ 152 (alleging the benefits Defendants conferred are "the purchase price of the health insurance" and "the federal subsidies"), 155 ("[T]he benefit was obtained by Defendants' fraudulent, misleading, and deceptive omission[.]"), 156 ("Plaintiff was harmed in the amount of the purchase price paid for the health insurance[.]")) (cleaned up).

Drawing inferences in Plaintiff's favor, her allegations compel the inference her claim accrued no later than December 2, 2021, more than three years before she filed the complaint, so her claim is time barred.  Plaintiff expressly alleges the last date she made a premium payment occurred in April 2021.  (Dkt. No. 49 ¶¶ 14, 15, 94, 136; Dkt. No. 34, Ex. 5 (showing last payment date on April 1, 2021); *see also id.* ¶ 101 ("From no later than February 1, 2025, through April 30, 2021, Defendants unlawfully retained Plaintiff's premium payments."))  Additionally, Defendants sent four checks purporting to "refund" those payments, the most recent of which was dated "December 2, 2021."  (*Id.* ¶ 74; Dkt. No. 34, Ex. 3; *see also* Ex. 5 (listing Plaintiff's premium payments, followed by annotation "refund".)  So, drawing inferences in Plaintiff's favor, Plaintiff's allegations do not support an inference Defendants conferred a benefit and Plaintiff was harmed within the three years preceding her filing the complaint on December 17, 2024, meaning her unjust enrichment claim is time barred as a matter of law.

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's unjust enrichment claim.

## II.    Failure to State a Claim

Plaintiff's allegations that are not time barred fail to state a claim.  These allegations are (1) Defendants' deposit of funds with the California State Controller constituted fraud, and (2) Defendants breached the implied covenant of good faith and fair dealing because it did not inform Plaintiff of her rights and obligations; in particular, Defendants' checks and letters sent in 2020 and 2021 "[c]oncealed material information regarding account credits, overpayments, and funds owed to Plaintiff."  (Dkt. No. 49 ¶ 146.)

First, drawing inferences in Plaintiff's favor, the allegations pertaining Defendants' deposit do not state a claim for fraud.  As noted in the Court's prior order, under California law, the elements of fraud are misrepresentation, knowledge of scienter, intent to induce reliance, Plaintiff's reliance, and resulting damage.  *Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (1996).  Plaintiff alleges Defendants "covertly placed" Plaintiff's premium payments with the California State Controller and "deliberately labeled" the money as "Invid Policy Benefits or Claim Paym."  (Dkt. No. 49 ¶ 74.)  Plaintiff also received a letter from the Controller, not from Defendants.  (*Id.* (citing Dkt. No. 34, Ex. 4).)  Drawing inferences in Plaintiff's favor, the only alleged "misrepresentation" is the "label" given to the deposit, but Plaintiff has not alleged facts supporting an inference she relied on, or incurred damages from, the label.  If anything, Defendants returned money to Plaintiff (and did so as required by California's unclaimed property law).  (*See* Dkt. No. 34, Ex. 4 (explaining the Controller's responsibilities with unclaimed property).)  So, to the extent Plaintiff's fraud claim is not time barred, the Court dismisses the cause of action for failure to state a claim.

Second, drawing inferences in Plaintiff's favor, the allegation Defendants' letter and checks "[c]oncealed" information does not plausibly support an inference Defendants breached the implied covenant of good faith and fair dealing.  To state a claim for a breach of the implied covenant, Plaintiff must allege facts sufficient to support an inference "the conduct of the defendant … demonstrates a failure or refusal to discharge contractual responsibilities, prompted

18

United States District Court
Northern District of California

not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act[.]" *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). Plaintiff styles her claim off of *Davis* and *Sarchett*, which found insurers violated the implied covenant as to its insureds based on (1) an insurance policy in effect, (2) a particular right in that policy, (3) the insurer's reason to know the insured was uninformed about the particular right, and (4) the insurer's "course of conduct" being designed to not inform the insured of the right. *See Davis*, 25 Cal. 3d at 425–30 (highlighting the arbitration clause was "buried in an obscure provision," "the average insured is not likely to be aware of a potential arbitration remedy," and the defendant "deliberately pursu[ed] a course of conduct which failed to apprise its insureds of the availability of arbitration."); *Sarchett*, 43 Cal. 3d at 15 ("Blue Shield had reason to know that Sarchett was uninformed of his rights, since he repeatedly protested the denial without demanding review by an impartial panel of physicians. Blue Shield nevertheless denied Sarchett's claim several times without mentioning his right to review[. …] This course of conduct appears designed to mislead subscribers into forfeiting their contractual right to impartial review and arbitration[.]")

Defendants correctly argue "[t]here is no allegation that rises to the level of bad faith" under *Careau*. (Dkt. No. 50 at 26-27). The June 11, 2020 letter informed Plaintiff she will be receiving refund checks for her "credit," "your health plan was terminated," "[t]he payments after termination were made by your bank," "[y]ou are enrolled through Covered California and … therefore any eligibility or premium disputes need to be disputed through Covered California directly[.]" (Dkt. No. 34, Ex. 8; *see id.*, Ex. 3.) Plaintiff does not allege what "information" was "[c]oncealed" in this letter or any subsequent communication, except the concealed information is somehow "regarding account credits, overpayments, and funds." (Dkt. No. 49 ¶ 146.) And the letter itself does not support an inference information about money was concealed; the letter identifies the entity Plaintiff should raise disputes with, and even provides two telephone numbers to reach Defendant if she has "additional questions regarding this matter" or "regarding your health plan." (Dkt. No. 34, Ex. 8.) Nor does Plaintiff allege facts supporting an inference this information was false, incomplete, or otherwise designed to hinder her rights. *Compare id.*

19

(identifying Plaintiff's insurer and points of contact for "additional questions"), *with Davis*, 25 Cal. 3d at 428–30 ("Blue Shield deliberately decided not to inform its insureds of the arbitration procedure."); *Sarchett*, 43 Cal. 3d at 14–15 (finding the insurer did not inform the insured of a right to impartial review where the insurer's denial letter said "*[w]e are so sorry that we cannot be of more help*[,]" which "could be read, in the absence of any mention of appeal procedures, … no further recourse may be had.") (emphasis in original).  Ultimately, Plaintiff has not alleged facts sufficient to support an inference Defendants deliberately interfered with her rights under an insurance policy, which is required to state a good-faith-and-fair-dealing claim.

Accordingly, the Court dismisses Plaintiff's claim for breach of the implied covenant of good faith and fair dealing for failure to state a claim, to the extent the claim is not time barred.

### III.    Leave to Amend

The Court already gave Plaintiff an opportunity to amend her claims to address the statutes of limitations and to identify what information was false in her attached exhibits.  (Dkt. No. 43 at 7-12.)  As further amendment would be futile, dismissal is without leave to amend as to her fraud, RICO, and unjust enrichment claims.  But dismissal of her breach of implied covenant claim is with leave to amend.  The Court's previous dismissal was based on her styling the claim as a breach of fiduciary duty and did not address the merits.  As Plaintiff is representing herself, the interests of justice require leave to amend this claim.  Plaintiff is cautioned, however, that the claim must be based on conduct that takes it within the statute of limitations.

### CONCLUSION

The Court grants Defendants' motion and dismisses Plaintiff's claims.  Notwithstanding Plaintiff's sincere belief in having been wronged, drawing all reasonable inferences in Plaintiff's favor, Plaintiff's allegations compel the inference almost all of Plaintiff's claims accrued outside the applicable statutes of limitations.  For those allegations that fall within the statutes of limitations for fraud and the implied covenant of good faith and fair dealing, drawing inferences in Plaintiff's favor, those allegations do not state a claim.  Additionally, Plaintiff has not plausibly alleged applications of the discovery rule or equitable tolling.  As Plaintiff has already had the opportunity to amend her claims, dismissal is without leave to amend except as to her claim for

United States District Court
Northern District of California

breach of the implied covenant of good faith and fair dealing.

Should Plaintiff choose to amend her complaint, she must do so by May 1, 2026. The amended complaint may allege a claim for breach of the implied covenant, but no other claims. Her appeal rights as to the other dismissed claims are preserved. If Plaintiff does not file an amended complaint, judgment will be entered for Defendants at that time.

This Order disposes of Docket Nos. 50 and 53.

**IT IS SO ORDERED.**

Dated: April 9, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

21