UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN O'NEILL, | Case No.  25-cv-00876-JSC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** |
| CALIFORNIA PHYSICIANS' SERVICE, et al., | Re: Dkt. Nos. 59, 60 |
| Defendants. | |

Plaintiff Kathleen O'Neill, proceeding without attorney representation, alleges Defendants California Physicians' Service, dba Blue Shield of California, and Blue Shield of California Life and Health Insurance Company (collectively, "Defendants") unlawfully terminated her health insurance coverage and misrepresented her rights under the insurance policy.  (Dkt. No. 58.)[1] Plaintiff's Third Amended Complaint ("TAC") asserts California state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's unfair competition law.  Before the Court are Defendants' motions to strike portions of, and to dismiss, the TAC.  (Dkt. Nos. 59, 60.)  Upon review of the moving papers, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L-R. 7-1(b), VACATES the June 18, 2026 hearing, and GRANTS Defendants' motions for the reasons set forth below.  The Court grants Defendants' motion to strike Plaintiff's new claims and prayers for relief because they exceed the scope of the Court's permitted leave and prejudice Defendant.  Additionally, the Court dismisses Plaintiffs' good-faith-and-fair-dealing claim because, drawing inferences in Plaintiff's

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

favor, Plaintiff's allegations compel the inference some of Plaintiff's claims are time barred as a matter of law, and for the claims which are not time barred, Plaintiff has not alleged facts sufficient to support an inference Defendants acted in bad faith.

# BACKGROUND

The Court reiterates its discussion of Plaintiff's allegations and the case's procedural history from its prior orders granting Defendants' motions to dismiss the First Amended Complaint ("FAC") and Second Amended Complaint ("SAC").  (Dkt. Nos. 48, 57.)

## I.    FAC and SAC Allegations

Plaintiff's FAC brought claims for fraud and deceit, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and breach of fiduciary duty.  (Dkt. No. 48 at 2-3.)  The Court dismissed those claims with leave to amend, noting the applicable statutes of limitations barred all of Plaintiffs' claims, Plaintiff's RICO and fraud claims did not identify false statements with sufficient particularity, and the breach-of-fiduciary-duty claim was better styled as a claim for breach of the implied covenant of good faith and fair dealing.  (*Id.* at 7-12.)

Subsequently, Plaintiff's SAC brought fraud, RICO, good-faith-and-fair-dealing, and unjust enrichment claims under largely the same facts as her FAC.  (Dkt. No. 57 at 1-2.)  As relevant here, between 2015 and 2018, Defendants made false statements regarding Plaintiff's health insurance coverage and denied her benefits.  Between 2015 and 2018, Defendants' tax forms stated Plaintiff was "fully enrolled and receiving full health insurance coverage. That representation was false. During this period, Plaintiff did not have access to covered benefits." (Dkt. No. 49 ¶ 13.)  Throughout "2016 and 2017, Defendants repeatedly denied coverage for specific visits despite Plaintiff's timely payment of premiums." (*Id.* ¶ 37.)  During that period, Defendants also sent Plaintiff various letters, which had "conflicting representations on coverage and premium payments." (*Id.* ¶¶ 19-36.)  For example, a September 19, 2016 letter contained instructions "implying that premiums were unpaid and stating that the Defendants were pleased to confirm reinstatement of Plaintiff's health plan coverage," whereas a letter sent the next day stated "her coverage had been cancelled, and she had no right to receive benefits effective April 30, 2016." (*Id.* ¶ 19.)  Then, between 2017 and 2018, Defendants "communicated" its denials of

United States District Court
Northern District of California

Plaintiff's health benefits to debt collectors.  (*Id.* ¶¶ 55-56.)

In 2018, Plaintiff obtained a small claims judgment against Defendant Blue Shield.  As Plaintiff described, the judgment "ordered [Defendant] to reopen her online account, reinstate her health insurance coverage, coordinate payments of medical bills [, …] and pay $5,700.00" in damages." (*Id.* ¶ 63; *see* Dkt. No. 34, Ex. 7.)  The minute order, attached as an exhibit, did not specify whether insurance should be reinstated retroactively to cover past medical bills, or whether Blue Shield must reinstate Plaintiff's insurance moving forward (and if so, under what terms).

After the small claims judgment, Plaintiff continued to make premium payments, while Defendants made additional representations that attempted to "pay Plaintiff off" in various ways. (Dkt. No. 49 ¶¶ 74-91) (cleaned up).  Blue Shield sent a letter, dated June 11, 2020, in response to Plaintiff's "request for a refund of payments made by your account after your health plan was terminated" which states "a credit of $8,084.98" for those payments "will be sent to you." (Dkt No. 34, Ex. 8.)  Plaintiff asserted this letter

> acknowledged a credit of $8,084.98 but disavowed responsibility for Plaintiff's ongoing eligibility or disputes over premiums. This misrepresented Defendants' obligations and falsely suggested that Plaintiff's rights and accounts had been fully reconciled. Defendants concealed that they had continuing obligations to apply premiums correctly and maintain active coverage.

(Dkt. No. 49 ¶ 77.)  Six days later, on June 17, 2020, Defendants sent a check to Plaintiff for that exact amount–$8,084.98–with the statements "refund issued via check" and "this account is overpaid. Your coverage ended, resulting in an overpayment."  (*Id.*, Ex. 3.)  Over the next year and a half, Defendants sent three more checks, the last of which is dated December 2, 2021, and all of which said "premium refund" or "coverage ended," and the amount of money in the checks corresponds to payments Plaintiff made to Defendants after 2018.  (*Compare id.*, Ex. 3 (four checks), *with* Ex. 5 (itemized table with dates of Plaintiff's payments and Defendants' subsequent refunds).)  All four checks "characterized these payments as overpayments or refunds" and "obscured the true status of her premiums and coverage, inducing Plaintiff to continue acting as if all coverage issues were resolved, including maintaining premium payments and refraining from alternative insurance actions."  (*Id.* ¶ 78.)  Plaintiff did not specify what the "true status of her

premiums and coverage" was during this time, except that "coverage issues were resolved." (*Id.*)

Finally, "[a]round September 19, 2024, Defendants covertly placed $8,082.98 with the California State Controller's Unclaimed Property Division.  The funds were deliberately labeled by Defendants as 'Invid Policy Benefits or Claim Paym,' rather than as reimbursement of premiums or overpayments."  (*Id.* ¶ 74.)  Plaintiff's SAC cited a letter from the California State Controller explaining the deposit.  (*Id.* (citing Dkt. No. 34, Ex. 4).)  The letter, addressed to Plaintiff, stated:

> This is to inform you that the property listed below may belong to you. This property was turned over to the State Controller's Unclaimed Property Division, as required by law, for safekeeping until it can be claimed by the rightful owner or their heirs. California's unclaimed property law requires businesses to submit property, […] to the state if there has been no activity on the account, or the business has had no contact with the owner, generally for three years.

(Dkt. No. 34, Ex. 4.)  The letter is dated August 19, 2024, more than four years after the date in Defendants' refund check for a nearly identical amount of $8,084.98; lists Plaintiff's correct name and address; and identifies the "type of property" as "Indiv Policy Ben or Claim Paym."  (*See id.* Exs. 3, 4.)

## II.    The Court's Order Dismissing Plaintiff's SAC

The Court granted Defendants' motion to dismiss Plaintiff's SAC, noting drawing all inferences in Plaintiff's favor, most of Plaintiff's claims are time barred and the claims which are not time barred fail to state a claim.  (Dkt. No. 57 at 3-19.)  The SAC's dismissal was without leave to amend as to Plaintiff's fraud, RICO, and unjust enrichment claims.  (*Id.* at 20.)  The Court gave Plaintiff leave to amend her good-faith-and-fair-dealing claim, cautioning Plaintiff any amended complaint "may allege a claim for breach of the implied covenant, but no other claims," and "the claim must be based on conduct that takes it within the statute of limitations."  (*Id.* at 20-21.)

As relevant here, Plaintiff's good-faith-and-fair-dealing claim "asserted Defendants had an 'affirmative duty to reasonably inform [her] of her rights and obligations under the policy.'"  (*Id.* at 15 (quoting Dkt. No. 49 ¶ 143).)  Her claim was (and is) styled off of *Davis v. Blue Cross of N. Cal.*, 25 Cal. 3d 418 (1979) and *Sarchett v. Blue Shield of Cal.*, 43 Cal. 3d 1 (1987), in which the

California Supreme Court held the implied covenant of good faith and fair dealing imposes on an insurer

> the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy. In particular, in situations in which an insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's attention relevant information so as to enable the insured to take action to secure rights afforded by the policy.
>
> In *Davis*, the insurer breached that duty by requiring arbitration where "the average insured is not likely to be aware of a potential arbitration remedy or of the means of initiating such a procedure." In *Sarchett*, the insurer breached that duty by "fail[ing] to bring relevant information about the right to impartial review and arbitration to its insured's attention" where the insurer "had reason to know that [the plaintiff] was uninformed" of that right because the plaintiff "repeatedly protested" without invoking the right.

(Dkt. No. 57 at 15) (cleaned up).

Further, Plaintiff's claim

> allege[d] five theories: Defendants (1) "[d]en[ied] covered medical claims despite full premium payment and federal certification of continuous coverage;" (2) "[r]epresent[ed] that coverage was 'not in effect' while simultaneously reporting active coverage to federal agencies;" (3) [r]efus[ed] to pay medical claims that Defendants knew or should have known were covered;" (4) [s]hift[ed] unpaid claims into collections rather than correcting coverage errors[;]" and (5) "fail[ed] to reasonably inform Plaintiff of her rights and obligations under the policy."

(*Id.* at 14 (quoting Dkt. No. 49 ¶¶ 143-149).)  The Court dismissed the claim, noting

> [t]o the extent those first four theories can sustain a good-faith-and-fair-dealing claim, drawing inferences in Plaintiff's favor, that claim is time barred as a matter of law because her allegations compel the inference she sustained damages from those allegations no later than 2018. Plaintiff repeatedly states this conduct continued "through 2021" (*id.* ¶¶ 52, 120), but her allegations do not support an inference she first sustained damages later than 2018. First, Plaintiff states Defendants continued to deny "medical claims" and benefits "through 2021." (*Id.* (citing "Dkt. No. 34, Exs. 14, 15, 18, 20").) But the only medical treatment Plaintiff received, and the correspondence about that treatment, occurred "[i]n 2016 and 2017." (Dkt. No. 49 ¶ 37; *see id.* ¶¶ 37-54; Dkt. No. 34, Ex. 14 (showing "Surgical Services" on "9/15/17"), Ex. 15 (showing "Date of Service" on "12/19/16"), Ex. 20 (letter dated December 1, 2017 noting Defendants "received your request for expedited appeal"), Ex. 18 (response to Plaintiff's grievance dated December 18, 2017).) Relatedly, Defendants' representation "coverage was 'not in effect'" occurred "[o]n October 25, 2017." (Dkt. No. 49 ¶ 42.) Plaintiff then sued and obtained a judgment ordering Defendants to pay for acupuncture treatments in

May 2018. (Dkt. No. 34, Ex. 7.) Finally, Plaintiff alleges three instances where "a debt collector sent Plaintiff a letter," all of which occurred in 2017 and 2018. (Dkt. No. 49 ¶ 55.) As soon as Plaintiff sustained damages from this conduct, which would be no later than 2018, her claim accrued and the statute of limitations "attache[d] at once." See *Spellis* [*v. Lawn*], 200 Cal. App. 3d [1075,] 1080–81 [(1988)] (cleaned up). So, drawing inferences in Plaintiff's favor, her good-faith-and-fair-dealing claim is time barred as a matter of law, to the extent it relies on denial of claims, representations about coverage that were simultaneous with tax filings, and debt collection.

(Dkt. No. 57 at 14-15.)

Although Plaintiff's first four theories were time barred, the Order noted, "Defendants ha[d] not met its burden to show the fifth theory in Plaintiff's claim–Defendants failed to reasonably inform Plaintiff of her rights and obligations under the policy–is time barred as a matter of law." (*Id.* at 15) (cleaned up).

Plaintiff alleges several instances of Defendants failing to inform her of her rights and obligations and, drawing inferences in Plaintiff's favor, claims arising from all but one of those instances are time barred as a matter of law. Plaintiff alleges Defendants should have alerted her to "available remedies, procedures, and options necessary to secure coverage and benefits." ([Dkt. No. 49] ¶ 143.) To the extent she has a claim under *Davis* and *Sarchett* pertaining to "coverage and benefits," that claim would be time barred because, as explained above, drawing inferences in Plaintiff's favor, the only treatments for which Plaintiff was denied coverage occurred in 2016 and 2017, and the last debt collection attempt occurred in 2018. Plaintiff then alleges Defendants "[f]ailed to clearly and accurately explain coverage status, reinstatement rights, or the consequences of alleged premium posting issues; [i]ssued contradictory and misleading termination and reinstatement notices[; and f]ailed to inform Plaintiff of … procedures necessary to preserve benefits;" and "[p]rovided partial, misleading, or inconsistent explanations designed to discourage Plaintiff from effectively pursuing her rights." (*Id.* ¶ 146.) Again, Plaintiff's allegations compel the inference any claims about "benefits," "coverage," "inconsistent explanations," and "premium posting" arose no later than 2017, when Defendants made the alleged communications about these subjects and, in doing so, allegedly failed to bring the relevant information to Plaintiff's attention.

The one good-faith-and-fair-dealing claim that is not time barred arises from the allegation Defendants "[c]oncealed material information regarding account credits, overpayments, and funds owed to Plaintiff." (*Id.*) Presumably, this allegation refers to the letter and checks Defendants sent between June 2020 and December 2021, and the October 2023 letter showing Plaintiff's monthly payments the checks purported to refund. Defendants' motion does not explain why a claim arising from these allegations are time-barred, except to say "any alleged breaches necessarily occurred before December 31, 2017" because "Plaintiff does not dispute that her contractual relationship with Blue Shield ended on December 31, 2017 when the

6

policy was last terminated." (Dkt. No. 50 at 29-30.) Not so. Plaintiff's allegations support an inference there was a breach of a contractual (or at least a quasi-contractual) relationship within the four-year statute of limitations period: she alleges a judgment ordering Blue Shield to reinstate her insurance, she continued to pay premiums "through April 30, 2021," documentation of those payments through April 2021, and Defendants' letter and checks "concealed that they had continuing obligations to apply premiums correctly and maintain active coverage" rather than "properly accounting for Plaintiff's entitlements under the health plan." (*See, e.g.*, Dkt. No. 34, Exs. 3, 5, 8; Dkt. No. 49 ¶¶ 15, 77, 78.) Defendants do not explain why, drawing inferences in Plaintiff's favor, these do not constitute a breach within the statute of limitations period. So, Defendants have not met their burden to show why a good-faith-and-fair-dealing claim arising from this conduct would be time barred.

(Dkt. No. 57 at 15-17.)

Although Defendants did not establish the good-faith-and-fair-dealing claim regarding concealed information was time barred, Defendants met their burden to show Plaintiff failed to state a claim about concealed information because Plaintiff did not allege "facts sufficient to support an inference Defendants deliberately interfered with her rights under an insurance policy, which is required to state a good-faith-and-fair-dealing claim." (*Id.* at 19.)

Plaintiff must allege facts sufficient to support an inference "the conduct of the defendant … demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act[.]" *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). Plaintiff styles her claim off of *Davis* and *Sarchett*, which found insurers violated the implied covenant as to its insureds based on (1) an insurance policy in effect, (2) a particular right in that policy, (3) the insurer's reason to know the insured was uninformed about the particular right, and (4) the insurer's "course of conduct" being designed to not inform the insured of the right. *See Davis*, 25 Cal. 3d at 425–30 (highlighting the arbitration clause was "buried in an obscure provision," "the average insured is not likely to be aware of a potential arbitration remedy," and the defendant "deliberately pursu[ed] a course of conduct which failed to apprise its insureds of the availability of arbitration."); *Sarchett*, 43 Cal. 3d at 15 ("Blue Shield had reason to know that Sarchett was uninformed of his rights, since he repeatedly protested the denial without demanding review by an impartial panel of physicians. Blue Shield nevertheless denied Sarchett's claim several times without mentioning his right to review[. …] This course of conduct appears designed to mislead subscribers into forfeiting their contractual right to impartial review and arbitration[.]")

Defendants correctly argue "[t]here is no allegation that rises to the level of bad faith" under *Careau*. (Dkt. No. 50 at 26-27). The June 11, 2020 letter informed Plaintiff she will be receiving refund checks

for her "credit," "your health plan was terminated," "[t]he payments after termination were made by your bank," "[y]ou are enrolled through Covered California and … therefore any eligibility or premium disputes need to be disputed through Covered California directly[.]" (Dkt. No. 34, Ex. 8; *see id.*, Ex. 3.) Plaintiff does not allege what "information" was "[c]oncealed" in this letter or any subsequent communication, except the concealed information is somehow "regarding account credits, overpayments, and funds." (Dkt. No. 49 ¶ 146.) And the letter itself does not support an inference information about money was concealed; the letter identifies the entity Plaintiff should raise disputes with, and even provides two telephone numbers to reach Defendant if she has "additional questions regarding this matter" or "regarding your health plan." (Dkt. No. 34, Ex. 8.) Nor does Plaintiff allege facts supporting an inference this information was false, incomplete, or otherwise designed to hinder her rights. *Compare id.* (identifying Plaintiff's insurer and points of contact for "additional questions"), *with Davis*, 25 Cal. 3d at 428–30 ("Blue Shield deliberately decided not to inform its insureds of the arbitration procedure."); *Sarchett*, 43 Cal. 3d at 14–15 (finding the insurer did not inform the insured of a right to impartial review where the insurer's denial letter said "[w]e are so sorry that we cannot be of more help[,]" which "could be read, in the absence of any mention of appeal procedures, … no further recourse may be had.") (emphasis in original).

(Dkt. No. 57 at 19-20.)

### III.     New Allegations

Plaintiff's TAC alleges four claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unfair competition, and (4) "injunctive relief" under Section 17200 of California's Business and Professions Code.  (Dkt. No. 58 ¶¶ 27-63) (cleaned up).  The TAC omits Plaintiff's allegations about Defendants' tax form statements, debt collections, and the small claims judgment she obtained in 2018.  (*See generally id.*)  Plaintiff now emphasizes "Defendants' bad faith handling, denial, and cancellation without legal cause of Plaintiff's insurance coverage."  (*Id.* ¶ 1.)  Specifically, Plaintiff "purchase[d]" a "Silver 87 health insurance policy," she "has paid for and been a […] policyholder" "[a]t all relevant times," and "Defendants accepted Plaintiff's premium payments" for the policy between "February 1, 2015 through April 30, 2021."  (*Id.* ¶¶ 1, 8.)

> Based on these facts, Plaintiff remained fully insured, within the four-year statute of limitations, and was entitled to uninterrupted coverage until she ceased making premium payments in May 2021. Defendants accepted each payment without interruption and have refused to identify any lawful basis for denying or terminating coverage between February 2015 and August 2021.

(*Id.* ¶ 12.)

Defendants, however, "failed to provide […] coverage" and "engaged in deceptive and unfair business practices to evade responsibility for doing so." (*Id.* ¶ 2.) Plaintiff alleges new instances where Defendants denied Plaintiff coverage: a 2020 visit to an ophthalmologist and a 2021 urgent care visit. (*Id.* ¶¶ 34-35; *see id.*, Exs. 5-6.) Additionally, Plaintiff raises many theories for how Defendants violated the implied covenant of good faith and fair dealing, some of which were previously alleged. These include: (1) "unreasonably denying or withholding benefits due under the Policy," (2) "[u]nreasonably and unjustifiably preventing access to the Policy," (3) "failing to conduct a fair and objective claims investigation," (4) "failing to treat Plaintiff fairly," (5) "executing a directive to systematically deny claims and retroactively terminate the Policy without legal cause," (6) "[f]ailing to communicate appropriately with the insured regarding the reason why coverage was not available," (7) "[f]ailing to inform" Plaintiff of her "rights and obligations under the Policy," (8) "[m]isrepresenting the content of the policy," (9) "hiding essential information in an effort to discourage Plaintiff from pursuing the full benefits under the Policy," (10) "[r]efusing to pay any or adequate insurance benefits which a reasonable person would have believed Plaintiff was entitled to receive," (11) "[p]roviding boilerplate, inapplicable explanations and non-sensical check amounts" instead of a "reasonable explanation" for Defendants' conduct, and (12) "[f]ailing to promptly escheat" Plaintiff's uncollected refund checks. (*Id.* ¶¶ 43-45.)

In addition to specific visits where she was denied coverage, Plaintiff cites three overarching examples of Defendants' bad-faith conduct: (1) Defendants' refund checks sent in 2020 and 2021, (2) a letter Defendants sent on October 20, 2023, and (3) Defendants' transfer of unclaimed refunds to the California State Controller. (*Id.* ¶¶ 16-25.)

First, Plaintiff re-alleges facts about Defendants' refund checks:

> Defendants issued multiple checks to Plaintiff—dated June 17, 2020 ($8,084.98), July 12, 2021 ($2,700), September 15, 2021 ($300), and December 2, 2021 ($300)—conduct that constitutes an acknowledgment of consideration paid by Plaintiff for coverage and is irreconcilable with any subsequent denial thereof. Each check was marked with a statement that "This account is overpaid. Your coverage ended" or "Premium Refund," omitting accounting of the

9

source of these amounts or the legal basis for the termination of paid coverage. (See Exs. 1:1-4.) Plaintiff alleges this course of action exposes Defendants' post hoc attempt to manufacture a lack of coverage defense for non-payment after accepting premiums and acting in a manner consistent with an active policy. Indeed, Plaintiff alleges this was the course chosen by Defendants to maximize their retention of premiums while providing no corresponding insurance coverage. Having accepted premiums and issuing payments under the Policy, Defendants are estopped, as a matter of law, from denying coverage or disavowing their contractual obligations.

(Dkt. No. 58 ¶ 13.)  Plaintiff attached these letters and checks to her SAC, but now states

Defendants' characterization of these checks as refunds "is not supported by their own payment

history, contractual terms, or course of performance[.]"  (*Id.* ¶ 15.)

Second, Plaintiff attaches to her TAC a letter Defendants sent on October 20, 2023.  (*Id.*,

Ex. 2.)  The letter, which Plaintiff previously alleged, states:

> Dear [Plaintiff],
>
> Thank you for your question about your coverage.
>
> Our records indicate that [you were] eligible from February 1, 2015 until December 31, 2017 when coverage was cancelled.
>
> First terminatiom [sic] date was 04/30/2016 and reinstated 05/01/2016. Second termination date was 12/31/2016 and reinstated on 01/01/2017. Third termination date was on 04/30/2017 and reinstated on 05/01/2017. Forth [sic] termination date was on 12/31/2017 and not reinstated again after that date.
>
> No person has the right to receive benefits of this plan for services following termination of coverage. Benefits of this plan are available only for services furnished during the term it is in effect and while the individual claiming benefits is actually covered by this agreement.

(*Id.*)  Plaintiff now asserts the letter is evidence of Defendants' bad faith because it contains

"shifting and contradictory positions."  (*Id.* ¶ 16.)  One "position" is that Plaintiff was "eligible"

for coverage "from February 1, 2015 until December 31, 2017"; the October 20, 2023 letter

"marked the first time Plaintiff became aware that Defendants had taken this position."  (*Id.*)

Another "position" is the letter's termination dates, which are "inconsistent and irreconcilable"

with "Defendants' prior course of performance, and […] lack any coherent or legally cognizable

basis."  (*Id.*)  Then, the letter essentially states an individual has the right to receive benefits under

a plan only while coverage is in effect.  (*Id.*)

Third, Plaintiff alleges new details about Defendants' deposit with the California state

10

government.  As noted above, Plaintiff previously alleged Defendants deposited money with the California State Controller, labeling the money as unclaimed policy benefits.  Plaintiff now alleges the deposit is part of a "continuing course of bad faith conduct" because "Defendants have not remitted all unclaimed premium funds […] as required by law."  (*Id.* ¶ 22) (cleaned up).  Additionally, for the first time in this litigation, Plaintiff alleges she "declined to cash Defendants' checks," hence why the money is unclaimed, and characterizes the checks as a "settlement offer" and as "partial settlement amounts that were a fraction of the premiums she paid," *i.e.*, "a fraction of" what Defendants owe her.  (*Id.* ¶¶ 22, 45.)  She also alleges, again for the first time, "[a]s of March 20, 2026, Plaintiff has received three separate letters confirming that Defendants continue to retain [premium] funds and have not transferred any of this property to the State Controller." (*Id.* ¶ 24.)  As relevant here, these three letters are all identical, attached to the TAC, dated March 20, 2026, provide contact information for Blue Shield of California, and state:

**<u>THE BUSINESS OR ENTITY LISTED BELOW HAS PROPERTY THAT MAY BELONG TO YOU</u>**

This letter is to inform you that the business or entity listed below may have property belonging to you and their attempts to contact you have been unsuccessful. The property may be in the form of cash from bank accounts, wages, [or] refunds[. …] California law requires the business or entity send the property to the California State Controller's Office (SCO) if contact with you is not reestablished. You must contact the business or entity listed below, before 05/31/2026, to prevent the transfer of your property to the SCO.

[…]

If you do not contact the business or entity prior to the deadline, 05/31/2026, the property will be sent to the SCO and held in perpetuity. There is no deadline to file a claim for the property with the SCO.

***<u>Your property currently resides with the business or entity listed above. The State Controller's office does not have your property.</u>***

[…]

(*Id.*, Ex. 3 at 1-3 (emphasis in original).)

**DISCUSSION**

**I.    Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), Defendants move to strike Plaintiff's first,

11

third, and fourth causes of action and the prayers for relief which flow from those claims, noting those claims and prayers "exceed[] the scope of amendment permitted by this Court." (Dkt. No. 59 at 1.)  The Court agrees.  The Order dismissing Plaintiff's SAC stated if Plaintiff chose to amend her complaint, "[t]he amended complaint may allege a claim for breach of the implied covenant, but no other claims." (Dkt. No. 57 at 21.)  Yet Plaintiff's first, third, and fourth causes of action allege new claims for breach of contract, unfair competition, and injunctive relief.  (Dkt. No. 58 ¶¶ 27-63.)  These claims therefore exceed the scope of amendment permitted in the Court's dismissal order and must be stricken as improper.  *See Nacarino v. Chobani, LLC*, 668 F. Supp. 3d. 881, 899–901 (N.D. Cal. 2022) (collecting cases where district courts granted motions to strike new claims which exceeded the scope of leave granted by the court); *see also Lizza v. Deutsche Bank Nat'l Trust Co.*, 714 Fed. App'x 620, 622 (9th Cir. 2017) (affirming dismissal of complaint "for exceeding the scope of amendment permitted in the court's first dismissal order" because the addition of new claims constituted a "failure to comply with a court order") (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992)).

Plaintiff's argument her new claims do not prejudice Defendants is unavailing.  Every new claim relies on facts alleged in her previous complaints and which existed at the time Plaintiff filed her initial complaint in January 2025, nearly a year and a half ago, meaning she had every opportunity to allege these claims in any of her three previous complaints.  (*See generally* Dkt. No. 58 ¶¶ 27-63.)  So, to permit these new, late-added theories of liability would prejudice Defendants.

Accordingly, the Court grants Defendants' motion to strike.

## II.    Motion to Dismiss Plaintiff's Good-Faith-and-Fair-Dealing Claim

As noted in the Court's prior order, Plaintiff must allege facts sufficient to support an inference Defendants' conduct is within the four-year statute of limitations and "demonstrates a failure to refusal to discharge contractual responsibilities" done in bad faith.  (Dkt. No. 57 at 19-21 (quoting *Careau*, 222 Cal. App. 3d at 1395).)  As also noted above, Plaintiff asserts at least 12 interrelated theories for how Defendants breached their duty of good faith and fair dealing.  (*See* Dkt. No. 58 ¶¶ 16-25, 43-45.)  Broadly speaking, those theories boil down to (1) terminating the

United States District Court
Northern District of California

12

health insurance policy, (2) denying coverage and benefits, (3) Defendants' communications to Plaintiff about her "rights," the "content of the Policy," and Plaintiff's premium payments, and (4) "[f]ailing to promptly escheat" refund checks. (*See id.*) So, Defendants' burden is to show, drawing all inferences in Plaintiff's favor, Plaintiff has not alleged facts to support an inference Defendants breached a duty of good faith and fair dealing, or did so within the four-year statute of limitations, under any of those theories.

Defendants move to dismiss Plaintiff's good-faith-and-fair-dealing claim, primarily arguing Plaintiff alleges conduct "far outside the statute of limitations" and "Plaintiff's allegations do not constitute bad faith." (Dkt. No. 60 at 4-5.) As noted in the Court's prior order, under *Careau*, *Davis*, and *Sarchett*, Plaintiff must allege "facts sufficient to support an inference Defendants deliberately interfered with her rights under an insurance policy […] to state a good-faith-and-fair-dealing claim." (*Id.* at 19-20.) The Order noted *Davis* and *Sarchett*

> found insurers violated the implied covenant as to its insureds based on (1) an insurance policy in effect, (2) a particular right in that policy, (3) the insurer's reason to know the insured was uninformed about the particular right, and (4) the insurer's "course of conduct" being designed to not inform the insured of the right. *See Davis*, 25 Cal. 3d at 425–30 (highlighting the arbitration clause was "buried in an obscure provision," "the average insured is not likely to be aware of a potential arbitration remedy," and the defendant "deliberately pursu[ed] a course of conduct which failed to apprise its insureds of the availability of arbitration."); *Sarchett*, 43 Cal. 3d at 15; ("Blue Shield had reason to know that Sarchett was uninformed of his rights, since he repeatedly protested the denial without demanding review by an impartial panel of physicians. Blue Shield nevertheless denied Sarchett's claim several times without mentioning his right to review[. …] This course of conduct appears designed to mislead subscribers into forfeiting their contractual right to impartial review and arbitration[.]")

(Dkt. No. 57 at 19-20.)

With respect to all of Plaintiff's good-faith-and-fair-dealing theories, the Court agrees with Defendants. Drawing all inferences in Plaintiff's favor, Plaintiff has not alleged facts supporting an inference Defendants terminated Plaintiff's policy within the four-year statute of limitations. Additionally, although Plaintiff alleges a coverage denial in 2021, a letter in October 2023, and letters from 2026 regarding Plaintiff's uncollected refund checks, Plaintiff has not alleged facts supporting an inference Defendants acted in bad faith, as opposed to "an honest mistake, bad

13

judgment or negligence[.]" *Careau*, 222 Cal. App. 3d at 1395.

### A. Termination of the Policy

First, Defendants assert they terminated Plaintiff's health insurance plan "in 2017," making the claim "far outside the statute of limitations." (Dkt. No. 60 at 5.) The Court agrees, in part. Plaintiff does not identify a specific date on which her health insurance policy was terminated. (*See generally* Dkt. No. 58.) Instead, she alleges she paid monthly premiums for the same policy for six years, a small claims court in 2018 ordered Defendant to reinstate the policy, and between March 2018 and April 2021 "Defendants accepted each payment without interruption." (*Id.* ¶¶ 8-13; *see* Dkt. No. 34, Ex. 7.) Defendants do not address the 2018 judgment and Plaintiff's allegations Defendants continued to accept payments, except to say "there is no valid contract between the parties," and therefore "no breach of contract, much less bad faith." (Dkt. No. 60 at 4-5.) So, Defendants have not shown why, drawing inferences in Plaintiff's favor, Plaintiff's allegations do not support an inference there was a valid contract at least when Defendant began accepting payments after the 2018 judgment.

However, drawing inferences in Plaintiff's favor, Plaintiff has not alleged facts supporting an inference Defendants terminated her health insurance policy within the four-year statute of limitations. Plaintiff appears to assert Defendants terminated her health insurance policy after her final payment on April 1, 2021, which would be within the four-year statute of limitations. (*See, e.g.*, Dkt. No. 58 ¶¶ 8-13.) But even assuming Plaintiff's health insurance policy was in effect after the 2018 judgment, Plaintiff's allegations compel the inference Defendants terminated the policy outside the four-year statute of limitations period. Plaintiff previously alleged Blue Shield sent a letter and a check regarding refunds in June 2020. (Dkt. No. 34, Exs. 3, 8.) The letter stated

> We have reviewed the information provided to [the Department of Managed Health Care] and found that there were no automatic payments set up with Blue Shield. The payments made after termination were made by your bank.
>
> You are enrolled through Covered California and Covered California determines your eligibility; therefore, any eligibility or premium disputes need to be disputed through Covered California directly.

(*Id.*, Ex. 8.) And the check reiterated "[y]our coverage ended, resulting in an overpayment." (*Id.*,

14

Ex. 3.)  So, to the extent Defendants' termination violates the implied covenant of good faith and fair dealing, drawing inferences in Plaintiff's favor, Plaintiff's allegations compel the inference that claim is time barred as a matter of law.

Accordingly, the Court grants Defendants' motion as to Plaintiff's claim regarding Defendants' termination of the health insurance policy.

### B.  Urgent Care Visits, Refund Checks, and the October 2023 letter

As noted above, the Court previously dismissed Plaintiff's good-faith-and-fair-dealing claim regarding Defendants misinforming Plaintiff about her rights and specific instances where Defendants did not provide coverage.  Now, to bring those allegations within the four-year statute of limitations, Plaintiff alleges she was denied coverage for urgent care visits in 2021 and re-characterizes Defendants' October 2023 letter as evidence Defendants lacked a good-faith basis for denying coverage.  (Dkt. No. 58 ¶¶ 16, 35, Ex. 6; *see generally id.*)  Plaintiff asserts "[u]nder the Policy, Urgent Care is $15/visit when using a Participating Provider," but Defendants denied benefits and "paid nothing" for the urgent care visits.  (*Id.* ¶ 35.)  And the October 23, 2023 letter is evidence of bad faith because it contains "positions" about termination which are "inconsistent and irreconcilable" with Defendants' prior communications. (*Id.* ¶¶ 16-20.)

As for the urgent care visit, Defendants contend "merely denying a claim wrongfully is insufficient to support an action for bad faith," citing *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713 (2007). (Dkt. No. 60 at 5.)  Under California law, "an insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable."  *Wilson*, 42 Cal. 4th at 723.  Under the so-called "genuine dispute rule," "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage is not liable in bad faith even though it might be liable for breach of contract."  *Id.* (cleaned up).  *Wilson* applied this rule under the summary judgment standard, noting

> [t]he genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under

United States District Court
Northern District of California

California law. ... On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably. Thus, <u>an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith.</u>

*Id.* at 723–24 (cleaned up) (emphasis added). So, here, on a motion to dismiss, Defendants must show, drawing inferences in Plaintiff's favor, Plaintiff has not alleged facts sufficient to support an inference Defendants' denial of coverage for the urgent care visit was "unreasonable," *i.e.*, Defendants lacked a "genuine dispute […] as to the existence of coverage." *Cf. id.*

Defendants have met that burden. Drawing inferences in Plaintiff's favor, Plaintiff has not alleged facts sufficient to support an inference Defendants' denial of coverage for her 2021 urgent care visits was done in bad faith. Plaintiff alleges Defendants' coverage denials were, among other things, "[d]eliberate, unjustifiabl[e], and "unreasonabl[e]." (*See, e.g.*, Dkt. No. 58 ¶ 45.) But aside from Exhibit 6, which is a bill from her urgent care provider saying coverage for services was "DENIED," Plaintiff does not allege facts explaining *why* Defendants denied coverage for the urgent care visits, let alone why that denial was unreasonable.[2] (*See* Dkt. No. 58 ¶ 35, Ex. 6.) Instead, Plaintiff broadly refers to Defendants' "refus[al] to identify any lawful basis for denying or terminating coverage" and Defendants' "course of conduct" between 2015-2024, *i.e.*, Defendants' other coverage denials, communications, and refund checks. (*See generally id.* ¶¶ 12-45.) But, as the Court's prior order explained, drawing inferences in Plaintiff's favor, claims arising from the refund checks were time barred as a matter of law, and Plaintiff's remaining allegations did not rise to the level of bad faith because Plaintiff did not allege facts supporting an inference Defendants' conduct was in bad faith, *e.g.*, Defendants concealed

---

[2] Defendants also argue, "according to Plaintiff's own exhibits," insurance coverage was "denied by entities *other than* Defendants." (Dkt. No. 60 at 4-5.) On the exhibit, the word "DENIED" immediately follows the words "Insurance Company: BCBS-HI." (*See* Dkt. No. 58, Ex. 6.) Defendants assert "BCBS-HI" refers to "Blue Cross Blue Shield of Hawaii," which is a "separate and independent entit[y]" from Defendants. (Dkt. No. 60 at 2-3.) It may be the case "BCBS-HI" refers to Defendants' Hawaii counterpart, but it is unclear why Plaintiff, a California resident whom Blue Shield previously insured, would represent to an urgent care provider she is insured by an insurance company in Hawaii. In any event, the Court must draw inferences in Plaintiff's favor, so the Court assumes, for purposes of this motion, it was Defendants who denied coverage for the 2021 urgent care visit.

16

United States District Court
Northern District of California

information about the insurance policy, communicated false or incomplete information about her rights, or otherwise deliberately acted in ways designed to hinder her rights. (*See* Dkt. No. 57 at 19-20.) So, the only allegation within the statute of limitations regarding Defendants' bad faith (and which the Court did not address as evidence of bad faith) is the October 23, 2023 letter, which Plaintiff previously alleged and now recharacterizes.

Drawing inferences in Plaintiff's favor, the October 23, 2023 letter does not support an inference Defendants denied coverage in bad faith, as opposed to "an honest mistake, bad judgment or negligence[.]" *Careau*, 222 Cal. App. 3d at 1395. As noted above, the letter states:

> Our records indicate that [you were] eligible from February 1, 2015 until December 31, 2017 when coverage was cancelled.
>
> First terminatiom [sic] date was 04/30/2016 and reinstated 05/01/2016. Second termination date was 12/31/2016 and reinstated on 01/01/2017. Third termination date was on 04/30/2017 and reinstated on 05/01/2017. Forth [sic] termination date was on 12/31/2017 and not reinstated again after that date.
>
> No person has the right to receive benefits of this plan for services following termination of coverage. Benefits of this plan are available only for services furnished during the term it is in effect and while the individual claiming benefits is actually covered by this agreement.

(Dkt. No. 57, Ex. 2.) Plaintiff asserts the letter takes the following "positions": Plaintiff was eligible for coverage between 2015 and 2017, Plaintiff's coverage was terminated four times throughout 2016 and 2017 then "not reinstated" after 2017, and "following termination of coverage," one cannot "receive benefits of this plan for services" because benefits are available "only for services furnished during the term it is in effect." (*Id.* ¶ 16.) Plaintiff maintains these "positions" support an inference of Defendants' bad faith because they are inconsistent with Defendants' prior communications and conduct. Not so. Plaintiff does not allege a single instance where Defendants took a position contrary to what the October 2023 letter says. In all of Plaintiff's exhibits, Defendants never stated coverage was reinstated or otherwise in effect after 2017, Defendants did not make representations about termination dates, nor did Defendants say a person has the right to receive benefits while the plan is not in effect. (*See* Dkt. No. 57, Exs. 1, 4 (refund checks from 2020-2021 stating "[y]our coverage ended"); Ex. 2 (October 2023 letter stating "coverage was cancelled" and "not reinstated" after December 31, 2017); Ex. 3 (letter from

17

the California State Controller regarding unclaimed refunds); Ex. 5 (bill from health care provider indicating Plaintiff is "NOT ELIG" for insurance coverage in 2020); Ex. 6 (bill from urgent care provider saying coverage was "DENIED" in 2021); Ex. 7 (letter showing "a summary" of premium payments and refunds between 2018-2021, with no representations regarding coverage); Ex. 8 (undated summary of benefits with no indication it was addressed to Plaintiff).) So, drawing inferences in Plaintiff's favor, Plaintiff's allegations do not support an inference Defendants unreasonably denied coverage or the October 2023 letter contains positions which are "inconsistent" with Defendants' prior positions, "constructed […] after the fact," or otherwise suggests Defendants' conduct was in bad faith. (*Id.* ¶¶ 16-20.)

Accordingly, the Court grants Defendants' motion as to Plaintiff's claims regarding coverage denials, the October 23, 2023 letter, and Defendants' other communications about her rights and obligations.

### C. Defendants' Deposit with the California State Controller

Finally, Plaintiff's other new allegation is "[a]s of March 20, 2026, Plaintiff has received three separate letters confirming that Defendants continue to retain [premium] funds and have not transferred any of this property to the State Controller." (*Id.* ¶¶ 16, 24, 34-35.) The "three separate letters" are Exhibit 3, and appear to be three copies of the same letter dated March 20, 2026 sent by California's State Controller's Office. (*See id.*, Ex. 3 at 1-3.) The letter states Blue Shield "may have property belonging to [Plaintiff]," Blue Shield's "attempts to contact [Plaintiff] have been unsuccessful," "[Plaintiff's] property currently resides with [Blue Shield]," and Plaintiff "must contact" Blue Shield "before 05/31/2026," otherwise "the property will be sent to the" State Controller's Office "and held in perpetuity." (*Id.*)

Drawing inferences in Plaintiff's favor, Plaintiff has not alleged facts showing Defendants' continued retention of and failure to deposit the money with the State Controller's Office is "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act[.]" *Careau*, 222 Cal. App. 3d at 1395. Plaintiff's allegations do not support an inference Defendants "fail[ed] or refus[ed] to discharge contractual responsibilities" because she alleges Defendants sent her checks;

United States District Court
Northern District of California

Defendants' checks said the checks were refunds for Plaintiff's premium payments, while Plaintiff characterizes the checks are "settlement offer[s]" representing a "fraction of" what Defendants owe her. (Dkt. No. 57 ¶¶ 22, 45, Exs. 1, 4.) Additionally, she expressly alleges she "declined to cash Defendants' checks," (*id.* ¶ 22), which does not support an inference Defendants' continued retention of Plaintiff's payments is a "conscious and deliberate act" *by Defendant*s. *See Careau*, 222 Cal. App. 3d at 1395. Moreover, the letter does not support an inference Defendants acted in bad faith by not transferring the money to the State Controller "as of March 20, 2026"; the letter explicitly says there is a "deadline" of "05/31/2026" for *Plaintiff* to contact Blue Shield, and if Plaintiff does not do so, the money "will be sent to" the State Controller. (Dkt. No. 58, Ex. 3 at 1-3.) Plaintiff does not allege she attempted to claim the money before the deadline or Defendants failed to escheat the money by the deadline; instead, she expressly alleges she "declined to cash" the checks Defendants sent her. (*Id.* ¶ 22; *see generally id.*) Accordingly, drawing inferences in Plaintiff's favor, Plaintiff has not alleged facts supporting an inference Defendants' continued retention of premium payments and failure to deposit the money with the State Controller violates the implied covenant of good faith and faith dealing.

So, the Court grants Defendants' motion to dismiss. Dismissal is without leave to amend because Plaintiff has had multiple opportunities to amend her claims and cannot state a claim against Defendants. Even if the Court did not strike Plaintiff's first, third, and fourth causes of action, and instead gave Plaintiff leave to amend to bring those claims, amendment would be futile. Because Plaintiff's allegations compel the inference Defendants' termination of her insurance policy and coverage denials began outside the statute-of-limitations period, drawing inferences in Plaintiff's favor, her allegations are insufficient to state a breach-of-contract claim or a related breach of the covenant of good faith and fair dealing as a matter of law. For example, while she alleges Defendants accepted premium payments through April 2021, she also alleges they attempted to refund those payments (which she has refused to cash), and that they repeatedly advised her the insurance policy was terminated as of December 2017. So, given Defendants' attempted refunds and purported termination occurred no later than June 2020, Plaintiff does not plausibly allege Defendants insured her within the statute of limitations. By extension, drawing

United States District Court
Northern District of California

inferences in Plaintiff's favor, Plaintiff's allegations cannot sustain derivative claims for unfair competition and injunctive relief.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motions. The Court strikes Plaintiff's new first, third, and fourth causes of action, as well as the prayers of relief flowing from those claims, as improper because those new, late-added theories exceed the scope of leave permitted in the Court's most recent dismissal order and prejudice Defendants. Additionally, the Court dismisses, without leave to amend, Plaintiff's claim for the implied covenant of good faith and fair dealing. A separate judgment will be entered.

This Order disposes of Docket Nos. 59 and 60.

**IT IS SO ORDERED.**

Dated: June 15, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

20